OPINION
{¶ 1} Plaintiff-appellant, Richard A. Stuller, appeals from a judgment of the Franklin County Court of Common Pleas that (1) found in favor of defendant-appellee, Mount Carmel Medical Center;[1] (2) dismissed with prejudice plaintiffs' complaint; (3) overruled plaintiffs' oral motion for judgment notwithstanding the verdict; and (4) overruled plaintiffs' oral motion for a new trial. For the following reasons, we affirm.
 {¶ 2} On July 13, 1998, Mr. Stuller was admitted to Mount Carmel Medical Center and underwent a Roux-en-y gastric bypass operation that was performed by defendant-appellee Phillip D. Price, M.D. Mr. Stuller was referred to Dr. Price for gastric bypass surgery due to medical complications associated with obesity.
 {¶ 3} During this gastric bypass operation, Dr. Price allegedly lacerated Mr. Stuller's spleen. Later, Mr. Stuller experienced severe complications that required additional surgical intervention and extended hospitalization. During this extended hospitalization, a ventilator tube disconnected, allegedly causing oxygen loss, resulting in blindness in Mr. Stuller's right eye. On or about October 15, 1998, Mr. Stuller was discharged to an extended care facility for additional care. Prior to permanently returning home, Mr. Stuller resided in other extended care facilities and required other hospitalizations.
 {¶ 4} In June 1999, in common pleas case No. 99CVA-06-5173, Mr. Stuller and his wife, Dorothy Stuller, sued Phillip D. Price, M.D., Roy C. St. John, M.D., Mount Carmel Medical Center, and others. In their complaint, which asserted three causes of action, plaintiffs alleged that all named defendants committed medical malpractice; that Mount Carmel Medical Center was negligent in supervising doctors, nurses, and medical personnel; that Dorothy Stuller sustained a loss of consortium; and that plaintiffs were entitled to punitive damages.
 {¶ 5} Following the commencement of the lawsuit, the parties engaged in extensive motion practice, which resulted in a tortuous procedural history.
 {¶ 6} Approximately one year after plaintiffs filed suit, in July 2000, Dr. Price moved for summary judgment. About one month after Dr. Price moved for summary judgment, Dr. St. John also moved for summary judgment. In September 2000, pursuant to Civ.R. 41(A), plaintiffs dismissed without prejudice Dr. St. John. Also, in September 2000, plaintiffs filed an amended complaint, which Dr. Price later moved to strike on the grounds that plaintiffs' amended complaint failed to comply with Civ.R. 15.
 {¶ 7} By entry filed November 20, 2000, the trial court granted Dr. Price's summary judgment motion, granted Dr. Price's motion to strike plaintiffs' amended complaint, and found Dr. St. John's motion for summary judgment to be moot. The trial court also found there was no just cause for delay. Plaintiffs appealed from the trial court's judgment, arguing that the trial court erred in granting summary judgment in favor of Dr. Price. InStuller v. Price (Sept. 20, 2001), Franklin App. No. 00AP-1355 ("Stuller I"), this court affirmed the trial court's judgment.[2]
 {¶ 8} Following Stuller I, plaintiffs moved the trial court to consolidate common pleas case No. 99CVA-06-5173 with case No. 01CVA-10-9771, which apparently was a partial refiling of case No. 99CVA-06-5173. Because the cause of action in case No. 01CVA-10-9771 had been terminated, the trial court denied plaintiffs' motion to consolidate.[3]
 {¶ 9} In December 2001, pursuant to Civ.R. 60(B), plaintiffs moved for relief from judgment as applied to Dr. Price in case No. 99CVA-06-5173. The trial court denied this motion. (See Decision and Entry filed Feb. 20, 2002.)
 {¶ 10} Mr. Stuller then appealed from the trial court's judgment that denied plaintiffs' Civ.R. 60(B) motion.[4] InStuller v. Price, Franklin App. No. 02AP-29, 2003-Ohio-583 ("Stuller II"),[5] a consolidated appeal from judgments in common pleas case Nos. 99CVA-06-5173 and 01CVA-10-9771, this court affirmed the trial court's judgment that denied plaintiffs' Civ.R. 60(B) motion.[6]
 {¶ 11} During the pendency of Stuller II, after becoming aware of a conflict of interest, the trial judge recused herself from the case. The case was then assigned to the administrative judge, who later recused himself from the case and assigned the case to a visiting judge.[7]
 {¶ 12} Although the trial court eventually stayed proceedings during the pendency of Stuller II, prior to the stay of proceedings, the parties continued to litigate pretrial issues. On March 21, 2002, Mount Carmel Medical Center moved in limine to strike the deposition of plaintiffs' expert witness, Jay Jacoby, M.D., Ph.D., that was taken on March 11, 2002, and Mount Carmel Medical Center alternatively moved to reconvene the deposition of Dr. Jacoby at plaintiffs' expense. In its motion, Mount Carmel Medical Center argued, among other things, that Dr. Jacoby was not competent to testify pursuant to Evid.R. 601(D).
 {¶ 13} Finding Dr. Jacoby was not a competent expert witness under Evid.R. 601(D), the trial court granted Mount Carmel Medical Center's motion to strike the deposition of Dr. Jacoby and, on the same day, after concluding plaintiffs' appeal inStuller II divested the trial court of jurisdiction, the trial court stayed the case. (See Journal Entries, filed April 23, 2002.)[8]
 {¶ 14} Plaintiffs later challenged the trial court's ruling concerning the admissibility of Dr. Jacoby's deposition testimony of March 11, 2002, as well as all decisions that were made by the assigned visiting judge.[9]
 {¶ 15} After concluding it lacked jurisdiction to render its ruling concerning the admissibility of Dr. Jacoby's deposition testimony, the trial court set aside its ruling that struck that deposition.[10]
 {¶ 16} Following a ruling from this court that granted a motion to proceed as to the remaining parties, see Stuller v.Price (July 10, 2002), Franklin App. No. 02AP-267 (journal entry), and in response to motions that were filed by plaintiffs, the trial court considered pending motions before it and reexamined whether to exclude Dr. Jacoby's deposition testimony.
 {¶ 17} On September 12, 2002, with respect to Dr. Jacoby's March 11, 2002 videotaped deposition, the trial court found that Dr. Jacoby, at the time of the videotaped deposition, was incompetent to provide expert testimony pursuant to Evid.R. 601(D) and, therefore, that deposition could not be used as evidence in plaintiffs' case-in-chief; however, pursuant to Evid.R. 607 and 613, the videotaped deposition could be used to impeach Dr. Jacoby or, alternatively, pursuant to Evid.R. 801(D)(1)(b), under certain limited circumstances, the videotaped deposition of Dr. Jacoby could be used to rehabilitate Dr. Jacoby. The trial court further found that Dr. Jacoby was not precluded from testifying, provided that at the time of his testimony, the trial court found him to be competent pursuant to Evid.R. 601(D). (See "Journal Entry ____ Orders on Pending Motions," filed Sept. 12, 2002.)
 {¶ 18} Following this ruling, the parties continued to litigate pretrial matters.
 {¶ 19} On November 7, 2002, plaintiffs moved in limine to preclude Mount Carmel Medical Center from introducing any evidence, argument, or inference relating to third-party liability as means to mitigate or deny liability on the grounds that Mount Carmel Medical Center failed to timely raise this issue.
 {¶ 20} Five days later, on November 12, 2002, Mount Carmel Medical Center moved to quash plaintiffs' notice of deposition concerning another deposition of Dr. Jacoby, which was scheduled for November 15, 2002, on the grounds that plaintiffs' notice failed to comply with the Ohio Rules of Civil Procedure. The trial court did not rule upon this defense motion.
 {¶ 21} On November 15, 2002, in another videotaped deposition, plaintiffs again deposed Dr. Jacoby. On December 2, 2002, three days before trial, Mount Carmel Medical Center moved in limine wherein it argued that, based upon Dr. Jacoby's videotaped deposition of November 15, 2002, he should not be permitted to testify pertaining to liability issues because he was not competent to provide expert testimony under Evid.R. 601(D).
 {¶ 22} Three days later, on December 5, 2002, the date that trial began, plaintiffs moved in limine to preclude Mount Carmel Medical Center from introducing any medical evidence, opinion, or testimony by any defense expert witness because the defense allegedly failed to timely provide an expert's report to plaintiffs. That same day, plaintiffs also moved for sanctions against Mount Carmel Medical Center.[11]
 {¶ 23} At a pretrial hearing on December 5, 2002, the trial court considered the outstanding motions that had been presented before it.
 {¶ 24} Regarding plaintiffs' motion in limine to prohibit the introduction of any evidence, argument, or inference relating to third-party liability as means to mitigate or deny liability, the trial court found evidence related to the alleged liability of Dr. Price would be highly prejudicial and, therefore, the trial court prohibited the introduction of any evidence by the parties that concerned his alleged liability for Mr. Stuller's injuries. However, evidence concerning an independent intervening cause would be admissible. Accordingly, the trial court granted, in part, plaintiffs' motion in limine to preclude Mount Carmel Medical Center from introducing any evidence related to third-party liability. (Tr. Vol. I, 23-24.) As to plaintiffs' motion in limine to preclude Mount Carmel Medical Center from introducing any medical evidence, opinion, or testimony by any defense expert witness, the trial court denied this motion. (Tr. Vol. I, 29-30.) The trial court also denied plaintiffs' motions for sanctions. (Tr. Vol. I, 31, 38.)
 {¶ 25} Concerning Mount Carmel Medical Center's motion in limine, the trial court found unpersuasive the defense's argument that Dr. Jacoby was incompetent to provide testimony, and it overruled the defense's motion to preclude the use of Dr. Jacoby's videotaped deposition of November 15, 2002. (Tr. Vol. I, 37-38.)
 {¶ 26} However, at the pretrial hearing of December 5, 2002, Mount Carmel Medical Center also moved to exclude Dr. Jacoby's videotaped deposition of November 15, 2002, on the grounds that plaintiffs failed to comply with Sup.R. 13(7).[12] (Tr. Vol. I, 40.) Additionally, Mount Carmel Medical Center also argued that plaintiffs were precluded from using a written transcript of Dr. Jacoby's videotaped deposition of November 15, 2002, because plaintiffs failed to obtain a proper waiver of deponent's signature as required by the Ohio Rules of Civil Procedure. See, e.g., Civ.R. 30(E). Finding the videotaped deposition of November 15, 2002, failed to comply with Sup.R. 13(7), the trial court granted Mount Carmel Medical Center's motion in limine to exclude Dr. Jacoby's videotaped deposition. (Tr. Vol. I, 67-68.)
 {¶ 27} Thereafter, plaintiffs orally moved the trial court to reconsider its exclusion of Dr. Jacoby's videotaped deposition of November 15, 2002. Upon reconsideration, the trial court found the videotaped deposition could not be used at trial; however, the written transcript of the videotaped deposition could be used at trial, thereby sustaining in part and denying in part plaintiffs' motion for reconsideration. (Tr. Vol. I, 75-77.)[13]
 {¶ 28} On December 5, 2002, following the pretrial hearing that disposed of the parties' pretrial motions, a jury trial commenced.
 {¶ 29} At the conclusion of plaintiffs' case-in-chief, Mount Carmel Medical Center moved for a directed verdict. The trial court denied the defense's directed verdict motion as to plaintiffs' negligence claim pertaining to a ventilator disconnection. However, the trial court granted Mount Carmel Medical Center's directed verdict motion as to plaintiffs' remaining claims. (See "Judgment Entry — Directed Verdict" filed Dec. 12, 2002.)
 {¶ 30} At the close of evidence, Mount Carmel Medical Center renewed its motion for a directed verdict; the trial court denied this defense motion. Additionally, at the close of evidence, plaintiffs moved for a directed verdict; the trial court denied this motion.
 {¶ 31} After deliberating, the jury found in favor of Mount Carmel Medical Center. Upon discharge of the jury, plaintiffs orally moved for judgment notwithstanding the verdict and for a new trial. The trial court overruled both oral motions.
 {¶ 32} On December 31, 2002, the trial court rendered judgment in favor of Mount Carmel Medical Center, dismissed with prejudice plaintiffs' complaint, and overruled plaintiffs' oral motions for judgment notwithstanding the verdict and for a new trial.
 {¶ 33} On January 23, 2003, plaintiff Richard A. Stuller (hereinafter "appellant"), appealed from the trial court's judgment of December 31, 2002. In his appeal, appellant raises 16 assignments of error, as follows:
ASSIGNMENT OF ERROR #1
 The trial court improperly overruled appellants-plaintiffs'motion in limine to exclude the appellee-defendant's expert forfailure to disclose the necessary expert information.
 ASSIGNMENT OF ERROR #2
 The trial court committed prejudicial error when it allowedthe introduction of appellee-defendant's expert testimony thatexceeded the scope disclosed over the appellants-plaintiff'sobjections and motion in limine[.]
ASSIGNMENT OF ERROR #3
 The trial court committed prejudicial error when it allowedthe introduction of the testimony of Dr. Hickey despite theopinion not being expressed in terms of medical probability overappellants-plaintiffs' objections.
 ASSIGNMENT OF ERROR #4
 The trial court committed prejudicial error when it overruledappellants-plaintiffs' motion to request the jury to disregardthe testimony of appellee-defendant's expert Dr. Hickey[.]
ASSIGNMENT OF ERROR #5
 The trial court commited prejudicial error when it allowed avideotape that violated superindentance [sic] rule 13 to beplayed over appellants-plaintiffs' objections.
 ASSIGNMENT OF ERROR #6
 The trial court committed prejudicial error when it allowedthe jury to hear hearsay testimony by an expert witness overappellants-plaintiffs' objection.
 ASSIGNMENT OF ERROR #7
 The trial [court] erred when it denied appellants-plaintiffs'motion for a mistrial because of the introduction of hearsayevidence and testimony being played that was inadmissiable [sic]and incompetency of the expert witness.
 ASSIGNMENT OF ERROR #8
 The trial court committed prejudicial error when it did notenforce the subpeona [sic] of a properly subpeoned [sic] witnessof the appellants-plaintiffs who was a treating physcian [SIC]and further erred when it did not allow the appellants-plaintiffsto call him out of order and allowed the appellee-defendant touse his testimony despite appellants-plaintiffs' inability tocall him on direct.
 ASSIGNMENT OF ERROR #9
 The trial court committed prejudicial error when it allowedthe trial to proceed without the presence of a court reporter andhad knowlege [sic] that appellants-plaintiffs had continuingobjections that needed to be put on the record and upon therequest of appellants-plaintiffs' [sic] to have a record.
 ASSIGNMENT OF ERROR #10
 The trial court commited prejudicial error when it directed averdict for the appellee-defendant on all issues except the causeof action related to the ventilation disconnect.
 ASSIGNMENT OF ERROR #11
 The trial [court] committed prejudicial error when it overuled[sic] appellants-plaintiffs' motion for a directed verdictagainst the appellee-defendant on the grounds that theappellee-defendant's expert did not testify to proximate cause orprovided any testimony rebutting appellants-plaintiffs' expert'stestimony[.]
ASSIGNMENT OF ERROR #12
 The trial [court] erred to the prejudice of theappellants-plaintiffs' [sic] when the court excluded thevideotape deposition of plaintiffs' expert over plaintiffs'objections.
 ASSIGNMENT OF ERROR #13
 The trial court commited prejudicial error when it allowed theappellee-defendant to use hearsay portions of dr. hickey'sdeposition in blow-up exhibits for the jury to view duringclosing arguments.
 ASSIGNMENT OF ERROR #14
 The trial court committed prejudicial error when it did notallow for a jury instruction on the theory of agency byestoppel.
 ASSIGNMENT OF ERROR #15
 The trial court committed prejudicial error when it instructedthe jury to disregard certains [sic] acts of negligence that hadnot been subject to the directed verdict.
 ASSIGNMENT OF ERROR #16
 The trial court erred when it overruled appellants-plaintiffs'motion for a new trial.
 {¶ 34} Preliminarily, in his reply brief, appellant alleges Mount Carmel Medical Center violated Loc.R. 7(E) of the Tenth District Court of Appeals[14] when it failed to append to its merit brief unreported cases upon which Mount Carmel Medical Center relied.[15] Therefore, appellant argues that this court should not consider these unreported cases.
 {¶ 35} However, appellant has not shown substantial prejudice due to Mount Carmel Medical Center's alleged oversight. Therefore, appellant's argument that this court should not consider unreported opinions upon which Mount Carmel Medical Center relied in its merit brief is not well-taken. See, e.g.,Hahn v. Satullo, 156 Ohio App.3d 412, 2004-Ohio-1057, at ¶ 29
(finding no substantial prejudice because plaintiffs obtained unreported opinions that plaintiffs claimed were not attached to defendants' brief).
 {¶ 36} Appellant's first assignment of error asserts the trial court improperly overruled plaintiffs' motion in limine to exclude Mount Carmel Medical Center's experts, Daniel M. Haile, M.D., and Charles Joseph Hickey, M.D., on the grounds that Mount Carmel Medical Center failed to disclose experts' reports.
 {¶ 37} "An appellate court does not directly review the rulings on motions in limine. A pretrial ruling on such a motion is a preliminary precautionary ruling by a court in anticipation of its ruling on evidentiary issues at trial. * * * A court's initial denial of a motion in limine does not preserve any error for review. * * * Thus, the evidence must be presented at trial, and a proper proffer made, in order to preserve the error for appeal." White v. Center Mfg. Co.
(1998), 126 Ohio App.3d 715, 722. See, also, Steubenville v.Schmidt, Jefferson App. No. 01 JE 13, 2002-Ohio-6894, at ¶ 14. Moreover, whether to admit or exclude evidence is within the broad discretion of the trial court and, absent an abuse of discretion that is materially prejudicial to a party, a trial court's decision will stand Kirschbaum v. Dillon (1991),58 Ohio St.3d 58, 66. An abuse of discretion, however, connotes more than an error of law or judgment; rather, it implies the court's attitude was unreasonable, arbitrary, or unconscionable. Tracyv. Merrell Dow Pharmaceuticals, Inc. (1991), 58 Ohio St.3d 147,152.
 {¶ 38} Here, after Dr. Haile was called to testify at trial, plaintiffs failed to object to the introduction of his testimony, thereby failing to preserve error as to this witness. (See Tr. Vol. V, 847.) Therefore, as to this defense expert, appellant's first assignment of error is not well-taken.
 {¶ 39} At trial, plaintiffs did, however, renew their motion in limine to exclude the videotaped deposition testimony of Dr. Hickey. (See Tr. Vol. IV, 736.) In overruling plaintiffs' motion to exclude the videotaped deposition testimony of Dr. Hickey, the trial court found that his videotaped deposition was properly noticed and properly taken as an evidentiary deposition. (See Tr. Vol. IV, 738. See, also, Notice of Evidentiary Deposition of Charles J. Hickey, M.D., filed Feb. 15, 2002; Tr. Vol. I, 29-30 [trial court's overruling of plaintiffs' motion in limine].)[16]
 {¶ 40} Having correctly found that Dr. Hickey's videotaped deposition was properly noticed and properly taken as an evidentiary deposition, we cannot conclude the trial court acted unreasonably, arbitrarily, or unconscionably in allowing it into evidence. Therefore, we find the trial court did not abuse its discretion by not excluding the videotaped deposition testimony of Dr. Hickey.
 {¶ 41} Accordingly, appellant's first assignment of error is overruled.
 {¶ 42} Appellant's second assignment of error asserts the trial court erred when, over plaintiffs' objections and motion in limine, it allowed Dr. Haile, an anesthesiologist, to testify to alternative theories of causation, which appellant claims exceeded the scope of Dr. Haile's anticipated testimony as disclosed during discovery.
 {¶ 43} Whether to admit or exclude evidence is within the broad discretion of the trial court and, absent an abuse of discretion that is materially prejudicial to a party, a trial court's decision will stand Kirschbaum, at 66. However, an abuse of discretion connotes more than an error of law or judgment; rather, it implies the court's attitude was unreasonable, arbitrary, or unconscionable. Tracy, at 152.
 {¶ 44} Here, as discussed above, after Dr. Haile was called to testify at trial, plaintiffs failed to object to the introduction of his testimony. (See Tr. Vol. V, 847.) Furthermore, based upon our review of Dr. Haile's testimony (see, e.g., Tr. Vol. V, 847-936), we do not find plaintiffs specifically objected to his testimony on the basis that it exceeded the scope as disclosed during discovery. (See, e.g., Tr. Vol. V, 853-854 [plaintiffs' objection that hypothetical question was premised on facts not in evidence]; id. at 856 [plaintiffs' objection that witness's answer was based upon facts not in evidence]; id. at 867-868 [withdrawn objection that witness's answer was based upon facts not in evidence]; id. at 923 [plaintiffs' objection with no stated grounds for the objection].)
 {¶ 45} Therefore, we cannot conclude the trial court abused its discretion when it admitted Dr. Haile's testimony.
 {¶ 46} Accordingly, appellant's second assignment of error is overruled.
 {¶ 47} Appellant's third, fourth, fifth, sixth, seventh, and ninth assignments of error assert various errors that appellant claims occurred during a portion of the proceedings wherein a court reporter was absent.
 {¶ 48} "Whenever an appellant's assignments of error are based on the evidence produced at trial, the appellant must provide the appellate court with a record to review. * * * App.R. 9 specifies how a transcript of the evidence or some acceptable alternative must be filed." Salcedo v. Zdrilich, Mahoning App. No. 02-CA-38, 2003-Ohio-4607, at ¶ 7.
 {¶ 49} Pursuant to App.R. 9(C), when a transcript is unavailable, as is the case here due to the court reporter's absence from a portion of the proceedings, an appellant may prepare a statement of the evidence or proceedings from the best available means, including an appellant's recollection. This statement shall be served upon the appellee and the statement and any objections or proposed amendments shall be submitted to a trial court for settlement and approval. See App.R. 9(C).
 {¶ 50} Here, appellant has failed to provide a statement of the evidence or proceedings pursuant to App.R. 9(C). Because appellant has failed to provide this court with a transcript or an acceptable alternative, there is nothing for this court to pass upon, and we presume the validity and regularity of the trial court proceedings. See Salcedo, at ¶ 9.
 {¶ 51} Accordingly, appellant's third, fourth, fifth, sixth, seventh, and ninth assignments of error are overruled.
 {¶ 52} Appellant's eighth assignment of error asserts the trial court committed prejudicial error when: (1) it failed to enforce plaintiffs' subpoena of Dr. Hickey; (2) it did not allow plaintiffs to call Dr. Hickey out of order; and (3) it allowed Mount Carmel Medical Center to introduce into evidence the videotaped deposition testimony of Dr. Hickey when plaintiffs were unable to call Dr. Hickey as a witness in their case-in-chief.
 {¶ 53} According to a copy of a subpoena that was served on November 19, 2002, plaintiffs subpoenaed Dr. Hickey to give testimony and to produce medical records at trial on December 5, 2002, at 9 a.m. (See copy of subpoena filed Dec. 5, 2002.) However, plaintiffs did not call Dr. Hickey to testify on December 5, 2002, and thereafter Dr. Hickey apparently believed that he was released from the subpoena and left town on vacation. (See Tr. Vol. IV, 637-640.) Following the issuance of a subpoena, plaintiffs' counsel had no contact with Dr. Hickey's office until December 9, 2002, when they contacted someone in Dr. Hickey's office, who informed them that Dr. Hickey was out of town on vacation. (Tr. Vol. IV, 639-640.)
 {¶ 54} On December 10, 2002, plaintiffs informed the trial court of Dr. Hickey's failure to appear and moved the trial court for an order to compel Dr. Hickey's appearance. (Tr. Vol. IV, 640-641.) Alternatively, plaintiffs moved for permission to call Dr. Hickey as a witness at the conclusion of the defense case, or for an order that would preclude Mount Carmel Medical Center from using Dr. Hickey's videotaped deposition testimony in its case-in-chief. Id. The trial court denied plaintiffs' motions. (Tr. Vol. IV, 643-644.)
 {¶ 55} "The order of proceedings is charged to the sound discretion of the trial court, which must afford the parties a reasonable opportunity to be heard concerning adjudication of their rights, interests, and obligations." Sturgill v. Sturgill
(Aug. 8, 1991), Montgomery App. No. 12457.
 {¶ 56} Here, in denying plaintiffs' request to call Dr. Hickey at the conclusion of the defense's case-in-chief, the trial court stated:
In light of the progress of the trial, the Court is not going to grant the request to call him at the conclusion of the defense case, as, of course, there are procedural issues that need to be addressed prior to that. * * * And, frankly, I have a jury trial on Monday scheduled, and it is the responsibility of Plaintiffs to adequately communicate with their witnesses to get them here. So Plaintiff notes the exceptions. They are saved, but the request to call [Dr. Hickey] out of order or to call him Friday, which I am treating as a motion for continuance of this trial until Friday, is denied. * * *
(Tr. Vol. IV, 643-644.)
 {¶ 57} We agree that it was plaintiffs' responsibility to adequately communicate with their witness, Dr. Hickey. Moreover, under these particular facts and circumstances, we cannot conclude that the trial court acted unreasonably, arbitrarily, or unconscionably in denying plaintiffs' request to call Dr. Hickey as a witness at the end of the defense case.
 {¶ 58} Moreover, under these facts and circumstances, we cannot conclude that plaintiffs were substantially prejudiced by the trial court's rulings. Here, although plaintiffs did not have an opportunity to examine Dr. Hickey in their case-in-chief, plaintiffs' counsel did examine Dr. Hickey under cross-examination during his videotaped evidentiary deposition, which was played during the defense's case-in-chief. (See, e.g., Tr. Vol. IV, 640 [plaintiffs' counsel conceding that she had an opportunity to cross-examine Dr. Hickey during his deposition].) Furthermore, even if plaintiffs would have been permitted to call Dr. Hickey in their case-in-chief, plaintiffs' counsel conceded that "I only have five questions for him, for Dr. Hickey, if he were in here live," (Tr. Vol. III, 629), and plaintiffs' examination of Dr. Hickey would be no longer than one-half hour. (Tr. Vol. IV, 643.)
 {¶ 59} Moreover, at trial plaintiffs did not make a proffer of Dr. Hickey's anticipated testimony at the time the trial court declined to issue a bench warrant. Plaintiffs did make a proffer in support of their oral motion for a mistrial, as follows:
THE COURT: And Dr. Hickey was deposed, and his testimony was played. Could you proffer for the record what additional testimony or evidence he would have provided[?]
MS. SIMS [Plaintiffs' counsel]: He was a treating physician. His testimony goes to the examination of November 19, treating physician, opthalmologist [sic], that goes to the heart of this case as to the vision in the eye. Through his testimony I would have been able to elicit direct examination questions as to his treatment of Richard Stuller
THE COURT: Might I suggest, if you will fill in the blank to the following phrase, it may assist you in proffering. If you had been able to have Dr. Hickey here, he would have testified in addition to testimony that he already gave, X. Fill in the blank.
MS. SIMS: Dr. Hickey would have testified to the consult report that he wrote and the consult report that he referred to, and his consult record he would have consulted with the fact there was no notation of blindness in November of 1998 on his consult report. As a treating physician opthalmologist [sic] he would have been able to present evidence directly and substantially required for the Plaintiff's case, and not having his appearance here as the treating physician, did not let the — allow the jury to get to weigh the evidence or his testimony upon my direct examination.
THE COURT: Do you have any additional proffer?
* * *
MS. SIMS: That his opinions as to Dr. Moses was based on his consult report given to him and that he in fact, we could have — he would in fact not have been allowed to, allowed to letting in the deposition that played before the jury.
(Tr. Vol. VI, 1239-1241.)
 {¶ 60} Having reviewed plaintiffs' proffer as well as plaintiffs' examination of Dr. Hickey as contained in the record (see Tr. Vol. IV, 751-783, 787-792, 793-797, 798-800), we conclude that plaintiffs were afforded a reasonable opportunity to inquire about appellant's blindness and Dr. Hickey's findings.
 {¶ 61} Additionally, under the facts and circumstances of this case, we cannot conclude that the trial court acted unreasonably, arbitrarily, or unconscionably in refusing to hold Dr. Hickey in contempt. See, e.g., Civ.R. 45(E) (providing, in part, that "[f]ailure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued"). (Emphasis added.) See, also, R.C. 2317.21 (attachment of witness who disobeys a subpoena); R.C. 1907.40 (liability of subpoenaed witness who does not appear or who refuses to testify).
 {¶ 62} Accordingly, finding no substantial prejudice, appellant's eighth assignment of error is overruled.
 {¶ 63} HHHAppellant's tenth assignment of error asserts the trial court erred when it granted directed verdict in favor of Mount Carmel Medical Center as to all causes of action, except to the cause of action related to the ventilator disconnection.
 {¶ 64} Appellate review of a trial court's ruling on a motion for directed verdict is de novo. McConnell v. Hunt Sports Ent.
(1999), 132 Ohio App.3d 657, 686-687; Snider v. Nieberding,
Clermont App. No. CA2002-12-105, 2003-Ohio-5715, at ¶ 6, appeal not allowed, 101 Ohio St.3d 1424, 2004-Ohio-123. When reviewing a directed verdict, an appellate court uses the same standard of review that the trial court applied. Snider, at ¶ 6.
 {¶ 65} Pursuant to Civ.R 50(A)(1), a party may move for a directed verdict on the opening statement of an opponent, at the close of opponent's evidence, or at the close of all evidence. Civ.R. 50(A)(4) provides:
When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
 {¶ 66} "In addition to Civ.R. 50(A), it is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion." Strother v. Hutchinson (1981),67 Ohio St.2d 282, 284, citing Durham v. Warner Elevator Mfg. Co. (1956),166 Ohio St. 31. Therefore, "`if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied. Kellerman v. J.S. DurigCo. (1964), 176 Ohio St. 320 * * *.'" Strother, at 284-285, quoting Hawkins v. Ivy (1977), 50 Ohio St.2d 114, 115.
 {¶ 67} In their complaint, plaintiffs alleged that all named defendants, including Mount Carmel Medical Center, "were negligent in their diagnosis, care and treatment of [Richard Stuller] that their conduct fell below the standard medical care ordinarily used by reasonable careful doctors, nurses and medical personnel practicing under the same or similar conditions and circumstances." (Complaint filed June 23, 1999, at ¶ 7.)
 {¶ 68} Furthermore, as to Mount Carmel Medical Center, plaintiffs alleged that it was "negligent in [its] supervising the defendant doctor, nurses, and medical personnel, including but not limited to, allowing unqualified individuals to administer and perform medical diagnosis, care and treatment on plaintiff, Richard Stuller, and by failing to establish appropriate protocols, rules and regulations for the care, management and servicing of patients before, during and after surgery." Id. at ¶ 8.
 {¶ 69} Here, after independently reviewing the record and construing the evidence most strongly in plaintiffs' favor, we find reasonable minds could come to but one conclusion, namely, that plaintiffs presented no evidence in their case-in-chief to support their claims that Mount Carmel Medical Center negligently supervised doctors, nurses, medical personnel, and that Mount Carmel Medical Center failed to establish appropriate protocols, rules, and regulations for the care, management, and servicing of patients. Moreover, even assuming arguendo that the evidence could be construed to establish that Mount Carmel Medical Center breached a duty to establish appropriate protocols, rules, and regulations for the care, management, and servicing of patients, we find that plaintiffs failed to offer evidence justifying a reasonable inference that Mount Carmel Medical Center's actions as to these claims constituted proximate cause of appellant's injuries. See, e.g., Whiting v. Ohio Dept. of Mental Health
(2001), 141 Ohio App.3d 198, 202-203 (observing that "[w]hile difficult to define, `proximate cause' is generally established `"where an original act is wrongful or negligent and, in a natural and continuous sequence, produces a result [that] would not have taken place without the act."' * * * Essentially, a plaintiff must present evidence upon which a trier of fact may reasonably determine that it is more likely than not that the negligence of a defendant was the direct or proximate cause of plaintiff's injury").
 {¶ 70} Furthermore, after independently reviewing the record and construing the evidence most strongly in plaintiffs' favor, we find reasonable minds could come to but one conclusion, namely, that, except for the cause of action related to the ventilator disconnection, plaintiffs failed to offer evidence justifying a reasonable inference that Mount Carmel Medical Center's actions constituted proximate cause of appellant's injuries. (Tr. Vol. IV, 731-734.) See, e.g., Engle v. SalisburyTwp., Meigs App. No. 03CA11, 2004-Ohio-2029, at ¶ 27 (observing that "[o]rdinarily, proximate cause is a question of fact for the jury. * * * However, `where no facts are alleged justifying any reasonable inference that the acts or failure of the defendant constitute the proximate cause of the injury, there is nothing for the jury (to decide), and, as a matter of law, judgment must be given for the defendant.'").
 {¶ 71} Accordingly, appellant's tenth assignment of error is overruled.
 {¶ 72} Appellant's eleventh assignment of error asserts the trial court erred when it overruled plaintiffs' motion for a directed verdict because Dr. Haile, a defense expert witness, failed to rebut plaintiffs' expert's testimony, and Dr. Haile failed to properly phrase his expert opinion in terms of medical probability.
 {¶ 73} Appellate review of a trial court's ruling on a motion for directed verdict is de novo. McConnell, at 686-687;Snider, at ¶ 6. When reviewing a directed verdict, an appellate court uses the same standard of review that the trial court applied. Id. "[I]t is well established that the court must neither consider the weight of the evidence nor the credibility of the witnesses in disposing of a directed verdict motion."Strother, at 284, citing Durham. Therefore, "`if there is substantial competent evidence to support the party against whom the motion is made, upon which evidence reasonable minds might reach different conclusions, the motion must be denied.Kellerman v. J.S. Durig Co. (1964), 176 Ohio St. 320.'"Strother, at 284-285, quoting Hawkins, at 115.
 {¶ 74} In Stinson v. England (1994), 69 Ohio St.3d 451, paragraph one of the syllabus,[17] the Supreme Court of Ohio held:
The admissibility of expert testimony that an event is the proximate cause is contingent upon the expression of an opinion by the expert with respect to the causative event in terms of probability. * * * An event is probable if there is a greater than fifty percent likelihood that it produced the occurrence at issue. * * * Inasmuch as the expression of probability is a condition precedent to the admissibility of expert opinion regarding causation, it relates to the competence of the evidence and not its weight. * * * Consequently, expert opinion regarding a causative event, including alternative causes, must be expressed in terms of probability irrespective of whether the proponent of the evidence bears the burden of persuasion with respect to the issue.
 {¶ 75} Here, on direct examination, defense counsel inquired of Dr. Haile as follows:
Q. (By Mr. Earl) Doctor, I want you to assume that on September 16, 1998, Mrs. Stuller was sitting in her husband's room at Mount Carmel Medical Center around 3:10 p.m. reading a book, and at that time the ventilator alarm sounded, and she got up and went to the bed of the patient. About that time or very shortly thereafter a nurse came into the room. Mrs. Stuller advised the nurse that she thought her husband had a mucous plug. The nurse then proceeded to suction the patient, and immediately following that the patient was ambubagged with oxygen, and following that, it was discovered that there apparently was a tube disconnected and that was replaced.
Assume those facts to be true. Assume further that there has been no direct testimony here as to how long the ventilator was allegedly disconnected, but we know that it apparently was a relatively short period of time. Assume that to be the case.
Now, do you have an opinion based upon your review of the medical records in this case and based upon reasonable medical probability as to whether or not that episode resulted in blindness to the right eye of Mr. Stuller, tremors, and his inability to walk? Do you have an opinion?
A. Yes, sir, I do have an opinion.
Q. What is your opinion?
A. My opinion is that would be extremely unlikely that ventilator problem contributed to any of those issues.
Q. Why is that, sir?
A. Well, for a number of reasons. * * *
(Tr. Vol. V, 855-856.)
 {¶ 76} The testimony of Dr. Haile that it was "extremely unlikely" that ventilator problems contributed to appellant's blindness in his right eye, tremors, and inability to walk was tantamount to an opinion that the cause advanced by plaintiffs was not the probable cause. Accordingly, it was therefore competent evidence that refuted a fact propounded by plaintiffs. The significance of Dr. Haile's testimony was in its ascription of a likelihood that was contrary to the cause espoused by plaintiffs, not to an alternative cause. See, e.g., Stinson, at 457.
 {¶ 77} Therefore, we conclude there is substantial competent evidence upon which reasonable minds might reach different conclusions. Accordingly, we cannot conclude the trial court erred when it denied a directed verdict in favor of plaintiffs. See Strother, at 284-285, quoting Hawkins, at 115.
 {¶ 78} Appellant's eleventh assignment of error is therefore overruled.
 {¶ 79} Appellant's twelfth assignment of error asserts the trial court erred when it excluded, over plaintiffs' objection, the videotaped deposition of plaintiffs' expert witness, Dr. Jacoby.
 {¶ 80} Whether to admit or exclude evidence is within the broad discretion of the trial court and, absent an abuse of discretion that is materially prejudicial to a party, a trial court's decision will stand Kirschbaum, at 66. An abuse of discretion, however, connotes more than an error of law or judgment; rather, it implies the court's attitude was unreasonable, arbitrary, or unconscionable. Tracy, at 152.
 {¶ 81} In a pretrial ruling, finding Dr. Jacoby's videotaped deposition of November 15, 2002, failed to comply with Sup.R. 13(7), the court granted Mount Carmel Medical Center's motion in limine to exclude his videotaped deposition. (Tr. Vol. I, 67-68.)
 {¶ 82} Later, upon ruling upon plaintiffs' post-trial motions, the trial court further explained its reasoning for excluding Dr. Jacoby's videotaped deposition of November 15, 2002, as follows:
With respect to the deposition of Dr. Jacoby, the Court notes that the Court's rulings with respect to the deposition of Dr. Jacoby were made as a result of matters brought to the attention prior to the playing of the deposition of Dr. Jacoby, originally with your motion in limine.
The Court had no confidence in the video tape complying with the rules and no confidence in the video tape being complete and accurate. It was not filed under seal, not filed under circumstances where based upon the day/date/time generator, based upon all the circumstances surrounding it, including and most especially, as the Court had indicated at that time, the witness not being given the opportunity to view the video taped deposition. And the video taped deposition having been filed on November 29, the Court found, its rulings are on the record, and the Court will stand by those rulings, and nothing has changed with respect to that.
(Tr. Vol. VI, 1263)
 {¶ 83} Pursuant to Rule 13(7) of the Rules of Superintendence for the Courts of Ohio, "[a]fter a videotape deposition is taken, the videotape shall be shown immediately to the witness for his examination, unless the examination is waived by the witness and the parties." Here, there is a dispute between the parties whether Dr. Jacoby waived examination of the videotaped deposition. (See, e.g., Tr. Vol. I, 67.)
 {¶ 84} Under these facts and circumstances, we cannot conclude the trial court's evidentiary ruling concerning Dr. Jacoby's videotaped deposition of November 15, 2002, was unreasonable, arbitrary, or unconscionable. Therefore, we find no abuse of discretion.
 {¶ 85} Accordingly, appellant's twelfth assignment of error is overruled.
 {¶ 86} Appellant's thirteenth assignment of error asserts the trial court erred when it allowed the defense to use enlarged transcript excerpts of Dr. Hickey's videotaped deposition testimony as demonstrative exhibits in its closing arguments.
 {¶ 87} "A trial court's ruling on a demonstrative exhibit is reviewed under the abuse-of-discretion standard. * * *' The term "abuse of discretion" * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable.' * * * `[W]hen applying this standard, an appellate court is not free to substitute its judgment for that of the trial judge.'" State v.Herring (2002), 94 Ohio St.3d 246, 255, certiorari denied,537 U.S. 917, 123 S.Ct. 301.
 {¶ 88} Here, plaintiffs concurred that the jury previously had heard the testimony contained in the demonstrative exhibits. (Tr. Vol. VI, 1130.) Thus, through these demonstrative exhibits, the defense was not offering any new evidence.
 {¶ 89} Moreover, to the extent that appellant argues the testimony in the demonstrative exhibits was hearsay, and plaintiffs objected to this testimony during a portion of the proceedings wherein a court reporter was not present to record plaintiffs' objection, we find this argument is unpersuasive. As discussed above, appellant has failed to provide this court with a statement of the evidence or proceedings pursuant to App.R. 9(C) for that portion of the proceedings wherein the court reporter was absent. Absent a transcript or an acceptable alternative, there is nothing for this court to pass upon, and we therefore presume the validity and regularity of the trial court proceedings. See Salcedo, at ¶ 9.
 {¶ 90} Accordingly, we find the trial court did not abuse it discretion when it allowed the defense to use the demonstrative exhibits during its closing argument.
 {¶ 91} Appellant's thirteenth assignment of error is therefore overruled.
 {¶ 92} Appellant's fourteenth assignment of error asserts the trial court erred when it did not allow for a jury instruction concerning liability based upon the doctrine of agency by estoppel.
 {¶ 93} Appellate review of a trial court's refusal to give a party's requested jury instructions entails a determination whether, under the facts and circumstances of the case, the trial court abused its discretion. Prejean v. Euclid Bd. of Edn.
(1997), 119 Ohio App.3d 793, 804-805; State v. Blasdell,155 Ohio App.3d 423, 2003-Ohio-6392, at ¶ 9. An "abuse of discretion" "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Prejean, at 805, citing State v. Adams
(1980), 62 Ohio St.2d 151, 157; Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 94} Under the doctrine of agency by estoppel, "[a] hospital may be held liable * * * for the negligence of independent medical practitioners practicing in the hospital when: (1) it holds itself out to the public as a provider of medical services; and (2) in the absence of notice or knowledge to the contrary, the patient looks to the hospital, as opposed to the individual practitioner, to provide competent medical care."Clark v. Southview Hosp. Family Health Ctr. (1994),68 Ohio St.3d 435, syllabus, overruling Albain v. Flower Hosp. (1990),50 Ohio St.3d 251, paragraph four of the syllabus. Furthermore, "[u]nless the patient merely viewed the hospital as the situs where her physician would treat her, she had a right to assume and expect that the treatment was being rendered through hospital employees and that any negligence associated therewith would render the hospital liable." Clark, at 445.
 {¶ 95} In reaching its decision, the Clark court discussedGrewe v. Mt. Clemens Gen. Hosp. (1978), 404 Mich. 240, 251,273 N.W.2d 429, and observed:
"[T]he critical question is whether the plaintiff, at the time of his admission to the hospital, was looking to the hospital for treatment of his physical ailments or merely viewed the hospital as the situs where his physician would treat him for his problems. A relevant factor in this determination involves resolution of the question of whether the hospital provided the plaintiff with [the treating physician] or whether the plaintiff and [the treating physician] had a patient-physician relationship independent of the hospital setting."
Id. at 439, quoting Grewe, at 273.
 {¶ 96} Here, appellant contends Dr. Price was negligent when, on July 31, 1998, after having been informed that appellant was hemorrhaging, Dr. Price ordered hospital staff to await his arrival. At the time that Dr. Price was informed of appellant's condition, he was at a seminar in Cincinnati, Ohio, and he left the seminar shortly thereafter to attend to appellant. Appellant further contends liability for Dr. Price's alleged negligence could be imputed to Mount Carmel Medical Center under a theory of agency by estoppel and, therefore, the trial court erred when it did not allow for a jury instruction based upon this theory.
 {¶ 97} In the instant case, appellant was referred to Dr. Price by another physician to evaluate whether appellant should undergo gastric bypass surgery, and appellant and Dr. Price met in Dr. Price's office prior to gastric bypass surgery. (See Tr. Vol. II, 225-226, 231; Tr. Vol. V, 977-979; Tr. Vol. VI, 997.) Thus, appellant and Dr. Price had a patient-physician relationship independent of the hospital setting, and the hospital was the situs where Dr. Price would treat appellant for his problems. We therefore cannot conclude, under these facts in evidence, that appellant met his burden for an instruction based upon a theory of agency by estoppel or that the trial court acted unreasonably, arbitrarily, or unconscionably when it refused appellant's proposed jury instruction based upon a theory of agency by estoppel.
 {¶ 98} Accordingly, appellant's fourteenth assignment of error is overruled.
 {¶ 99} Appellant's fifteenth assignment of error asserts the trial court committed prejudicial error when it instructed the jury as follows:
Plaintiffs have presented evidence of claims of negligence in surgery resulting in damage to Plaintiff's spleen; evidence of claims of negligence in surgery resulting in subsequent surgeries; an incident on July 31, 1998, involving hemorrhage of Plaintiff while Dr. Price was in Cincinnati; evidence of claims of negligence of recordkeeping; negligence arising out of improper granting of privileges to, improper discipline of, and improper retention of Dr. Price; improper personal care of Plaintiff (cleansing and covering); failure to provide proper therapy and follow-up care prior to and after discharge; and failure to vaccinate Plaintiff.
The Court has ruled upon all of those matters, and those matters are not before you to decide. You will disregard those claims and the evidence involving those claims, except to the extent you find that the evidence relates to the remaining claims of Plaintiffs.
(Tr. Vol. VI, 1207-1208.)
 {¶ 100} "Pursuant to Civ.R. 51(A), a party wishing to assign error to jury instructions must object to those instructions before the jury begins deliberations." Dunn v. Maxey (1997),118 Ohio App.3d 665, 669, citing Schade v. Carnegie Body Co.
(1982), 70 Ohio St.2d 207, paragraph one of the syllabus. Furthermore, "[a]bsent plain error, such a failure to object waives a party's right to raise the issue on appeal." Dunn, at 669, citing Reichert v. Ingersoll (1985), 18 Ohio St.3d 220,223.
 {¶ 101} Prior to the trial court's instructions to the jury, plaintiffs did not object to the above instruction. (See, e.g., Tr. Vol. VI, 1091 [plaintiffs' counsel requesting a jury instruction concerning agency by estoppel]; Tr. Vol. VI, 1091, 1093 [plaintiffs' counsel requesting an instruction for punitive damages]; Tr. Vol. VI, 1103-1104 [plaintiffs' counsel objecting to language concerning medical bills]. See, also, Tr. Vol. VI, 1109 [plaintiffs' counsel stating she was satisfied with the instructions with the exceptions that were saved for the record].)[18] Thus, having failed to object to the above instruction prior to jury deliberation, absent plain error, appellant has waived the right to raise this issue on appeal. SeeDunn, at 669.
 {¶ 102} "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic, fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss v. Davidson (1997),79 Ohio St.3d 116, syllabus. In this case, the only issue before the jury was a determination whether Mount Carmel Medical Center acted negligently regarding an incident involving a disconnected ventilator tube. Earlier in the proceedings, the trial court had granted a directed verdict in favor of Mount Carmel Medical Center as to the other causes of action. Under these circumstances, we do not find the trial court committed plain error in its instruction.
 {¶ 103} Moreover, appellant's reliance upon a post-trial interview of jurors, which is outside the record, is unpersuasive. See Merillat v. Bd. of Cty. Commrs. of FultonCty. (1991), 73 Ohio App.3d 459, 463, citing App.R. 9(A) andState v. Ishmail (1978), 54 Ohio St.2d 402 (stating that "[a]n appellate court can reach its decision only upon facts which are adduced in the trial court proceeding and cannot base that decision on allegations founded upon facts from outside the record").
 {¶ 104} Accordingly, appellant's fifteenth assignment of error is overruled.
 {¶ 105} Appellant's sixteenth assignment of error asserts the trial court erred when it overruled plaintiffs' motion for a new trial.
 {¶ 106} "It is well-settled that the decision on motion for a new trial pursuant to Civ.R. 59 is within the discretion of the trial court. The trial court's decision will be disturbed only upon a showing that such decision was unreasonable, unconscionable or arbitrary." Sharp v. Norfolk W. Ry. Co.
(1995), 72 Ohio St.3d 307, 312, order clarified by,73 Ohio St.3d 1429. See, also, Baker v. Dorion, 155 Ohio App.3d 560,2003-Ohio-6834, at ¶ 13.
 {¶ 107} Civ.R. 59(A), in relevant part, provides:
A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
(1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;
* * *
(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;
* * *
(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application.
In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown.
 {¶ 108} Here, appellant asserts that plaintiffs' motions for a new trial should have been granted on the following grounds: (1) there were irregularities in the proceedings that prevented plaintiffs from having a fair trial; (2) the judgment was not sustained by the weight of the evidence; and (3) errors of law occurred at trial that were brought to the attention of the trial court. See, generally, Civ.R. 59(A)(1), (A)(6), and (A)(9).
 {¶ 109} Here, as discussed above, appellant has failed to provide this court with a transcript or a statement of the evidence or proceedings pursuant to App.R. 9(C) concerning that portion of the proceedings wherein the court reporter was absent, which resulted in the alleged irregularity. Because appellant has failed to do so, there is nothing for this court to pass upon, and we presume the validity and regularity of the trial court proceedings. See Salcedo, at ¶ 9. Accordingly, we find unpersuasive appellant's assertion that the trial court abused its discretion when it failed to grant a new trial due to an irregularity in the proceedings or, alternatively, the trial court abused its discretion when it failed to grant a new trial due to an error of law that occurred at trial, which was allegedly brought to the attention of the trial court by plaintiffs during the time the court reporter was absent from the proceedings.
 {¶ 110} Appellant also asserts the trial court erred in not granting plaintiffs' motion for a new trial because the trial court's judgment is not sustained by the weight of the evidence. "Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus.
 {¶ 111} Here, we find the trial court's judgment is supported by some competent, credible evidence. In the instant case, the videotaped testimony of Dr. Hickey, if believed by the jury, established that appellant was visually impaired in his right eye in August 1998, prior to the ventilator disconnection that occurred in September 1998. Therefore, even assuming arguendo Mount Carmel Medical Center breached a duty of ordinary care with regard to the ventilator disconnection in September 1998, because the visual impairment in appellant's right eye occurred before the ventilator disconnected, appellant cannot establish that Mount Carmel Medical Center is liable for appellant's visual impairment due to a lack of proximate cause. See, e.g.,Whiting, at 202-203.
 {¶ 112} Moreover, Dr. Haile's testimony that it was "extremely unlikely" that ventilator problems contributed to appellant's blindness, tremors, and inability to walk, if believed by the jury, provided competent evidence that refuted a fact propounded by plaintiffs.
 {¶ 113} Furthermore, as discussed above, we find the trial court did not err by granting a directed verdict in favor of Mount Carmel Medical Center as to plaintiffs' claim that Mount Carmel Medical Center was negligent in supervising doctors, nurses, and medical personnel.
 {¶ 114} Consequently, we find unpersuasive appellant's contention that the trial court erred when it overruled plaintiffs' motion for a new trial.
 {¶ 115} Accordingly, appellant's sixteenth assignment of error is overruled.
 {¶ 116} For the foregoing reasons, all 16 of appellant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bowman and Sadler, JJ., concur.
[1] Mount Carmel Medical Center may more precisely be referred to as "Mount Carmel Health System d/b/a Mount Carmel Medical Center." However, in this opinion for ease of reference we refer to this defendant simply as "Mount Carmel Medical Center."
[2] During the pendency of Stuller I, the trial court stayed the proceedings and, following Stuller I, the trial court reactivated the case. (See Journal Entries filed on Apr. 4 and Oct. 24, 2001.)
[3] (See Journal Entry filed Dec. 14, 2001.)
[4] Although both Mr. Stuller and his wife were plaintiffs in the case below, in the notice of appeal filed on March 6, 2002, only Mr. Stuller was a named appellant.
[5] During the pendency of the appeal in Stuller II, the trial court again stayed the proceedings. (See Journal Entry dated Apr. 23, 2002.)
[6] See, also, Stuller v. Price, Franklin App. No. 03AP-30, 2003-Ohio-6826 ("Stuller III") (affirming grant of summary judgment and award of sanctions in favor of Dr. Price pertaining to Dorothy Stuller's separately filed loss of consortium claim against Dr. Price).
[7] The case was assigned to a visiting judge for purposes of trial; however, for purposes of administrative accounting, the case remained assigned to the administrative judge. (See Journal Entries filed Apr. 15, 2002.)
[8] In addition to these rulings, on that same date, the trial court also found one of plaintiffs' counsel in direct contempt of court and also granted counsel the privilege of purging her contempt.
[9] (See, e.g., Plaintiffs' Motion for Reconsideration of Defendant's Motion in Limine To Exclude Plaintiffs' Expert's Testimony, filed May 6, 2002; Plaintiffs' Motion for Introduction of Plaintiffs' Expert's Testimony, filed May 7, 2002; Plaintiffs' Motion to Strike All Decisions Made by the Visiting Judge and in the Alternative, Motion to Re-Assign [sic] Case to a Judge Familiar With Case File, filed Aug. 29, 2002.)
[10] (See, e.g., Journal entries filed on Sept. 9 and 12, 2002.)
[11] On December 4, 2002, plaintiffs also moved the trial court to allow videotaping of the trial proceedings. The trial court denied this motion. (Journal Entry Denying Motion to Videotape Trial filed on Dec. 5, 2002.)
[12] Rule 13(7) of the Rules of Superintendence For the Courts of Ohio provides: "After a videotape deposition is taken, the videotape shall be shown immediately to the witness for his examination, unless the examination is waived by the witness and the parties."
[13] At trial, the transcript of the videotaped deposition was later read into evidence. (See Tr. Vol. III, 363.)
[14] Loc.R. 7(E) of the Tenth District Court of Appeals provides, in relevant part, that "copies of all unpublished opinions which are cited in any memorandum or brief filed in this court shall be appended thereto."
[15] In support of his argument that unpublished opinions must be attached to a brief, appellant also relies upon former S.Ct.R.Rep.Op. 2(G)(3) (providing that a party that cites to an unpublished opinion shall attach a copy to a brief or memorandum). However, effective May 1, 2002, former S.Ct.R.Rep.Op. 2 was amended. Cf. S.Ct.R.Rep.Op. 2, effective May 1, 2002 (providing that "[o]pinions shall be published in the Ohio Official Reports and posted to the Supreme Court website as promptly as reasonably possible after their announcement. Posting and publication of opinions shall not be delayed by the filing of motions for reconsideration or by pending appeals"). Therefore, we find appellant's reliance upon former S.Ct.R.Rep.Op. 2(G)(3), which is no longer in effect, is unpersuasive.
[16] In overruling plaintiffs' motion in limine to exclude Mount Carmel Medical Center's expert witnesses' testimony, the trial court offered this reasoning: "In light of the fact that the identity of the witness has been known since September 26, 2000, in light of the fact that Plaintiffs do not have an expert report, in light of the fact that the Court does not have any journal entry in the record ordering otherwise, the Plaintiff's motion in limine of December 5, 2002, is denied." Id.
[17] See, also, Armstrong v. Brown, Trumbull App. No. 2000-T-0125, 2002-Ohio-6916, at ¶ 40, appeal not allowed,98 Ohio St.3d 1539, 2003-Ohio-1946 (stating that paragraph two ofStinson has been superseded by Evid.R. 706).
[18] Following the charge to the jury and before jury deliberations began, plaintiffs also did not raise an objection to the trial court's jury instructions. (See Tr. Vol. VI, 1221.)