WHITING, Admr., et al., Appellants,

v.

OHIO DEPARTMENT OF MENTAL HEALTH, Appellee.

[Cite as *Whiting v. Ohio Dept. of Mental Health* (2001), 141 Ohio App.3d 198.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–1062.

Decided March 29, 2001.

_Hunter, Carnahan & Shoub, Grant D. Shoub, Russell E. Carnahan_ and _Robert R. Byard,_ for appellants.

_Betty D. Montgomery,_ Attorney General, and _Eric A. Walker,_ Assistant Attorney General, for appellee.

BROWN, Judge.

Garry L. Whiting, administrator of the estate of Mary Ann Watts, decedent, and Theressa Thacker, plaintiffs-appellants, appeal the August 29, 2000 judgment of the Ohio Court of Claims finding that the Ohio Department of Mental Health ("ODMH"), defendant-appellee, was not negligent in failing to monitor David Pearce and ensure that he receive mandatory two-year commitment hearings while on conditional release. ODMH has filed a cross-assignment of error, claiming that the Court of Claims erred in finding that it was not immune from liability pursuant to R.C. 5122.34.

On November 25, 1984, David Pearce wounded his father with a handgun in Greenfield, Ohio. He was found not guilty by reason of insanity by the Highland County Court of Common Pleas and committed to Portsmouth Receiving Hospital ("PRH"), which is operated by ODMH. Pearce was diagnosed as suffering from a schizophrenic disorder and was given medication and other mental health treatment. He remained at PRH from July 24, 1985 to December 5, 1986. On December 5, 1986, at the request of PRH, Pearce was granted conditional release by the Highland County Common Pleas Court. Pearce began to receive mental health treatment at Scioto Paint Valley Mental Health Center ("SPV"), which is privately owned.

On December 5, 1986, Pearce moved into the Adult Residential Center, a staffed residential home operated by SPV. Pursuant to R.C. 2945.40 and 5122.15(H), Pearce was scheduled to undergo continual commitment hearings every two years; however, no commitment hearings took place for Pearce from May 25, 1988 to June 22, 1995. In June 1987, while still living in a supervised setting, Pearce moved into the Williamson Apartments in Chillicothe. As part of the residential agreement, Pearce agreed not to use alcohol or any non-prescribed drugs. On May 12, 1988, a hearing was held before the Highland County Court of Common Pleas regarding SPV's request to allow Pearce to live in an unsupervised setting. The court granted Pearce a release to live in an indepen-

dent, unsupervised setting, provided he continue treatment with SPV and not return to Greenfield, Ohio, where his parents lived, as well as other conditions. Pearce remained at the Williamson Apartments until May 1990, when Judith Rheinscheld of SPV informed Pearce that he needed to vacate his apartment because he confessed to her that he had used alcohol and non-prescribed drugs, a violation of his lease agreement. Pearce returned to Greenfield to live temporarily.

In June 1995, Watts and Thacker worked as waitresses at the Tecumseh Inn (the "Inn") in Chillicothe, Ohio. On June 20 and 21, Thacker served Pearce several beers. On June 22, Thacker served Pearce six beers. Pearce began asking Thacker personal questions and became angry when Thacker tended to other customers. Watts, witnessing Pearce's behavior, took his beer and dumped it down the sink. She told Pearce to leave the Inn, which he did. Pearce later called the Inn and spoke to Watts. Watts told him he was not allowed to ever return to the Inn. After retrieving a knife from his apartment, at approximately 1:50 a.m., Pearce returned to the Inn where he stabbed Watts and Thacker. As a result of the stabbings, Watts died and Thacker was wounded.

Appellants filed the present action on June 21, 1996. On July 30, 1996, the Court of Claims issued an entry to stay proceedings due to the pendency of a related action in the Franklin County Court of Common Pleas, in which appellants sought recovery from SPV. The common pleas court action against SPV was settled, and the case was dismissed with prejudice in December 1998.

The present action was re-docketed, and the court bifurcated the issues of liability and damages for trial. A trial on liability was held from December 13, 1999 to December 15, 1999. On August 29, 2000, the Court of Claims rendered its judgment, finding that although ODMH was not entitled to immunity, appellants had failed to demonstrate that ODMH owed a duty to appellants or that, assuming there was a duty, ODMH breached its duty and demonstrated proximate cause. Appellants now appeal the judgment of the Court of Claims, asserting the following assignments of error:

"I. ODMH is liable for the negligence of its employees in failing to perform the duties imposed, recognized and/or assumed by ODMH as part of the ODMH forensic manual to ensure that NGRI patients like David Pearce on conditional release from state mental health hospitals were adequately tracked, monitored and received their mandatory two–year commitment hearings.

"II. ODMH is also accountable to appellants in the same way and manner as a private party would be for the breach of similar duties owed to appellants arising from the private party's relationship with and responsibility for

and concerning NGRI patients like David Pearce on conditional release from state mental health hospitals."

We will address appellants' assignments of error together, as they both argue the same issue. Appellants essentially argue that the trial court's decision was against the manifest weight of the evidence. The standard of review in manifest weight cases has been clearly established. In determining whether the judgment of the trial court is against the manifest weight of the evidence, a reviewing court must be guided by the presumption that the findings of the trial court are correct, as the trial judge is best able to view the witnesses, observe their demeanor, gestures, voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276. The Ohio Supreme Court has also held that:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

In order to prove that ODMH was negligent, appellants had to establish, by a preponderance of the evidence, that ODMH owed them a duty, that ODMH breached that duty, and that the breach of that duty was the proximate cause of their injuries. See *Littleton v. Good Samaritan Hosp. & Health Ctr.* (1988), 39 Ohio St.3d 86, 92, 529 N.E.2d 449, 454. The trial court found appellants had failed to establish that ODMH owed a duty to them, and, even if it did, it did not breach that duty. The trial court further found that even if they had established that ODMH breached its duty, appellants failed to demonstrate that such breach was the proximate cause of their damages.

■ All of the elements of negligence must be demonstrated for a plaintiff to recover under a theory of negligence. Therefore, "negligence is without legal consequence unless it is a proximate cause of an injury." *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 347, 28 OBR 410, 411, 504 N.E.2d 19, 21. For the limited purpose of determining the present appeal, we will assume that, pursuant to former R.C. 2945.40(D)(3) and ODMH's forensic manual and revisions, ODMH had the duty to monitor Pearce and notify the Highland County Court of Common Pleas of Pearce's mandatory commitment hearings every two years and that it did, in fact, breach that duty. Thus, we will directly address only the issue of proximate cause, as it is dispositive of this case.

■ While difficult to define, "proximate cause" is generally established " 'where an original act is wrongful or negligent and, in a natural and continuous sequence, produces a result [that] would not have taken place without the act.' " *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 287, 21 O.O.3d 177, 180, 423

N.E.2d 467, 470–471. Essentially, a plaintiff must present evidence upon which a trier of fact may reasonably determine that it is more likely than not that the negligence of a defendant was the direct or proximate cause of the plaintiff's injury. *Stone v. Davis* (1981), 66 Ohio St.2d 74, 82, 20 O.O.3d 64, 69, 419 N.E.2d 1094, 1099. It is also well settled that because the issue of proximate cause is not open to speculation, conjecture as to whether the breach of duty caused the particular damage is not sufficient as a matter of law. See *Townsley v. Cincinnati Gardens, Inc.* (1974), 39 Ohio App.2d 5, 9, 68 O.O.2d 72, 74, 314 N.E.2d 409, 412. Further, a plaintiff must establish proximate cause by a preponderance of the evidence. See *Littleton*, 39 Ohio St.3d at 92, 529 N.E.2d at 454–455.

■ The trial court found that appellants failed to establish proximate cause. The court found that even if the two-year mandatory hearings were held, appellants did not demonstrate that the Highland County Court of Common Pleas would have re-hospitalized Pearce. Specifically, the Court of Claims found the testimony of appellants' witness, Dr. Otto Kausch, unpersuasive on the issue that Pearce would have been re-committed. Instead, the court found convincing the testimony of ODMH's witness, Dr. Gary Davis, who stated that Pearce was largely compliant with taking his medications and attending counseling, was capable of living independently, and was not a danger to himself or others. Appellants, however, claim that the trial court erred in weighing the testimony of Drs. Kausch and Davis.

At trial, Dr. Kausch, a board-certified forensic psychiatrist, testified that Pearce possessed several risk factors for committing future violence, including a past history of violence toward his family and others, violence associated with paranoia, violent fantasies, auditory hallucinations, talking to himself, and fantasies associated with drinking alcohol and using marijuana. Dr. Kausch cited numerous progress notes in the first half of 1995 that referenced Pearce's continued drug and alcohol use, including marijuana, crack cocaine, and tranquilizers. He also noted that in May 1990, Judith Rheinscheld wrote a letter to Pearce telling him he could no longer live in his apartment because he was abusing alcohol and nonprescription drugs. Dr. Kausch testified that this substance abuse was a significant risk factor for future violence. Dr. Kausch also noted that an incident in July 1993, in which Pearce fled police in his car, also demonstrated his potential for danger. Dr. Kausch opined that, within a reasonable degree of medical certainty, "it was just a matter of time until he was violent again given his extensive past history of violence, violent fantasies, violent threats, and especially continuing problems with drugs and alcohol." Dr. Kausch then concluded that had ODMH adequately monitored Pearce and notified the court of the conditional release violations, the court would have "very likely"

ordered Pearce to be re-hospitalized or placed under further restrictions. Dr. Kausch stated that if ODMH had followed through with its obligations, the stabbings on June 21, 1995 "would likely not have occurred."

On cross-examination, Dr. Kausch admitted that he did not know how the conditional release program worked in Highland County and that, even if Pearce's violations had been brought to the attention of that court, he did not know what the judge would have done due to differing opinions and philosophies on these matters. He also stated that from 1984 until the stabbings in 1995, Pearce exhibited violence on only one occasion in 1992, which involved either a verbal or physical fight with a neighbor. Dr. Kausch also admitted that from 1984 until 1995, Pearce never acted on any of his violent fantasies. He also stated that he had no knowledge of Pearce being violent with his parents while living with them during this period.

Dr. Davis, a board-certified psychiatrist at SPV, testified on behalf of ODMH. Dr. Davis treated Pearce from July 1988 to December 1995 and testified that he followed certain guidelines in determining whether he was going to return a patient to a psychiatric hospital. He looked at whether the patient posed a substantial risk to himself or to others, or was in need of treatment due to a psychiatric illness. Dr. Davis stated that Pearce maintained a diagnosis of schizophrenia and substance abuse since the early 1980s. He testified that, on a regular basis, he assessed whether Pearce was a danger to himself or others. At no time during his examinations of Pearce did he have him returned to the psychiatric hospital. Although Dr. Davis did execute an "involuntary form" to have Pearce re-committed in 1992 due to some problems with his family, he concluded that the problems were merely a manifestation of severe family dysfunction and not a situation in which Pearce posed a threat to himself or to others.

In April 1995, Dr. Davis wrote in his progress notes that Pearce did not need hospitalization, that he was acting his usual self, that his thought processes were coherent, and that Dr. Davis did not feel threatened or intimidated. Dr. Davis testified that he did not believe Pearce was suicidal or homicidal in April 1995, and Pearce told him the same. At that time, Dr. Davis had also spoken to Plynn Perrott, Pearce's case manager from 1990 to 1995, and Perrott also felt that there was no need for intervention at that time. Dr. Davis's May 1995 progress notes state that Pearce was less depressed, not angry, denied suicidal thoughts, denied harming others, and was acting his usual self with no obvious psychosis. He stated that based on his long-term assessment, Pearce was not posing a danger to himself or to others in May 1995. Dr. Davis further testified that during his meetings with Pearce, he was largely compliant with his treatment plan and

medication regimen. He stated that it was his opinion during his treatment of Pearce that Pearce was fit and able to live in the community.

On cross-examination, Dr. Davis stated that he was unfamiliar with the procedure to revoke an individual's conditional release. He further stated that he did not have any knowledge of the court orders in effect during the time that he was treating Pearce. He also testified that if he had been contacted by the Highland County Court of Common Pleas during this period, he would have informed the court that Pearce was residing in Greenfield, Ohio, and using alcohol and nonprescription drugs.

Considering the testimony of Dr. Kausch and Dr. Davis, we cannot say that the trial court's determination regarding proximate cause was against the manifest weight of the evidence. Although Dr. Kausch testified that Pearce would have been re-committed had the two-year hearings been held, Dr. Kausch admitted on cross-examination that he had no experience with the judge in Highland County and did not actually know if Pearce would have been re-committed. He further agreed that he could only "speculate" on this issue, which is insufficient as a matter of law with regard to proximate cause. See *Stone, supra.*

With regard to Dr. Davis's testimony, the trial court could have found it to be competent, credible evidence that Pearce may not have been re-committed had the two-year hearings been held. Dr. Davis testified that Pearce was not a threat to himself or to others. Significantly, Dr. Davis stated that Pearce was compliant with his treatment plan and medication regimen and was fit and able to live in the community. The trial court could have found Dr. Davis's opinion on this issue more persuasive than Dr. Kausch's, given that Dr. Davis had been Pearce's treating psychiatrist for seven years, had been meeting with him every few months during that period, and had a "rapport" with Pearce. To the contrary, Dr. Kausch had no personal experience with Pearce. Although appellants argue that it is speculative to find that the Highland County Court of Common Pleas would have given weight to Dr. Davis's opinion, the same thing may be said about the testimony of Dr. Kausch. Indeed, it is this obvious, high degree of uncertainty that renders appellants unable to establish proximate cause by a preponderance of the evidence.

Likewise, although appellants argue that Dr. Davis's opinion was not the appropriate standard by which the likelihood of Pearce's re-commitment to PRH should have been adjudged and, that, instead, the court should have looked only at whether Pearce had violated his conditional release terms, it is impossible to say that the Highland County court would not have taken Dr. Davis's overall opinion into consideration in making its final determination. Appellants are correct that where the court must determine whether there has been a violation of conditional release, the primary issue concerns the alleged violation of the

conditional release terms. Thus, evidence of an individual's mental state is irrelevant at such time. *State v. Gladding* (Jan. 20, 1989), Lake App. No. 12–209, unreported, 1989 WL 4277. However, once a violation is established, evidence of the mental state of an individual is relevant to the disposition of the individual and whether the release should be terminated or modified. *Id.* Thus, Dr. Davis's opinion that Pearce was not a danger to himself or to others would have likely been relevant in determining the final disposition and ultimate determination whether Pearce would have continued his conditional release. See *State v. Lampley* (June 14, 1993), Butler App. No. CA92–09–186, unreported, 1993 WL 199280, at * 3 (finding that the trial court could find a doctor's testimony, that a defendant would pose a danger to himself or to others, persuasive in determining whether a conditional release should be terminated).

In sum, we find it difficult to conclude, based on the evidence and testimony available, whether Pearce would have been re-committed to the psychiatric hospital so that the horrible events in June 1995 never would have occurred. There was competent, credible evidence to support the trial court's findings, and its determination was not against the manifest weight of the evidence. Therefore, we find that the trial court did not err in finding that appellants could not establish proximate cause to support their negligence claim. Appellants' first and second assignments of error are overruled.

ODMH has filed a cross-assignment of error, asserting that the trial court erred in finding that it was not entitled to immunity pursuant to R.C. 5122.34. However, it is well established that the "[a]ssignments of error of an appellee who has not appealed from a judgment may be considered by a reviewing court only when necessary to prevent a reversal of the judgment under review." (Citation omitted.) *Parton v. Weilnau* (1959), 169 Ohio St. 145, 8 O.O.2d 134, 158 N.E.2d 719 paragraph seven of the syllabus. See, also, *DiGiovanni v. Ohio Civil Serv. Emp. Assn.* (Dec. 15, 1981), Franklin App. No. 81AP–417, unreported, 1981 WL 3670 at * 3. Given that we are affirming the trial court's decision, we find that it is unnecessary to address ODMH's cross-assignment of error.

Accordingly, appellants' first and second assignments of error are overruled, we need not address ODMH's cross-assignment of error, and the judgment of the Ohio Court of Claims is affirmed.

*Judgment affirmed.*

PEGGY BRYANT, P.J., and BOWMAN, J., concur.