OPINION
{¶ 1} Plaintiff-appellant, Jennifer M. Keaton ("plaintiff"), in her capacity as administrator of the Estate of Timothy R. Keaton ("decedent"), appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Gordon Biersch Brewery Restaurant Group, Inc., dba Gordon Biersch Brewery Restaurant, and GB Acquisitions, Inc. ("Gordon Biersch").[1] Because the trial court properly granted summary judgment to Gordon Biersch, we affirm.
 {¶ 2} According to the factual allegations in plaintiff's original complaint, on May 26, 2002, a fight erupted in the bar portion of the Gordon Biersch premises between decedent's friend and a group of intoxicated patron assailants who had been drinking in the bar for a considerable period of time prior to the fight. (Complaint, ¶ 8.) When the fight was permitted to escalate over a significant and unreasonable period of time without intervention by Gordon Biersch employees, decedent attempted to rescue his friend, who was being beaten by members of the group of intoxicated patrons on Gordon Biersch premises. Id. When decedent attempted to intercede, he was fatally injured when his carotid artery was lacerated by one of the group of assailants, causing him to bleed to death on the premises of Gordon Biersch. Id. at ¶ 8-9.[2]
 {¶ 3} Plaintiff alleged that decedent's death was directly and proximately caused by Gordon Biersch's negligence in: (1) failing to maintain its assumed duty to provide adequate security for the protection and safety of bar patrons; (2) creating, permitting and acquiescing in an atmosphere of excessive alcohol consumption and aggressive and violent behavior, which created an imminent and foreseeable risk of harm to bar patrons; (3) failing to provide adequate employee training regarding control of intoxicated and unruly bar patrons; (4) failing to provide adequate employee training regarding deterrence, prevention, and control of excessive alcohol consumption and aggressive and violent conduct by bar patrons; (5) failing to take action to deter or intercede in the fight; (6) failing to prevent rioting, intoxication and drunkenness on its premises in violation of R.C.4399.16; 97) selling intoxicating beverages to intoxicated persons on its premises in violation of Ohio common law and R.C.4301.22(B) and 4399.18; (8) failing to maintain its duty to provide properly trained security personnel or to take other security measures for the prevention of and/or immediate intervention in the event of the occurrence of violent behavior on its premises; and (9) selling intoxicating beverages to underage persons on its premises in violation of R.C. 4301.22(A) and 4301.69(A). (Complaint at ¶ 11.)
 {¶ 4} Gordon Biersch filed a motion for summary judgment as to plaintiff's claims. In a memorandum in support of the motion, Gordon Biersch argued that summary judgment was appropriate for several reasons. First, Gordon Biersch argued that, because plaintiff alleged that an intoxicated person inflicted the injury, plaintiff could not assert a common law negligence claim, as R.C. 4399.18 provides the exclusive remedy for a person bringing a claim against a bar owner for injury caused by an intoxicated patron.
 {¶ 5} Second, Gordon Biersch argued that, as a matter of law, plaintiff could not successfully sustain a claim under R.C.4399.18 because there was no evidence that the action of an intoxicated person caused the injury or that the injury was the proximate result of Gordon Biersch's negligence in knowingly serving intoxicating beverages to an already intoxicated third party.
 {¶ 6} Third, Gordon Biersch asserted that, as a matter of law, plaintiff could not successfully maintain claims under R.C.4399.16, 4301.22 or 4301.69. Finally, Gordon Biersch argued that plaintiff could not successfully maintain a common negligence action even if such action were not precluded by R.C. 4399.18, as Gordon Biersch had no duty to protect its patrons from the unforeseeable acts of third parties.
 {¶ 7} Thereafter, with leave of court, plaintiff amended her complaint to plead the factual alternative that decedent's fatal injury was inflicted by an assailant or assailants who were patrons on the Gordon Biersch bar premises and who may have been intoxicated or if not intoxicated, were part of the group of intoxicated persons directly involved in the fight. Plaintiff's amended complaint also included the assertion that decedent intervened in the fight at the behest of Gordon Biersch.
 {¶ 8} Plaintiff filed a memorandum contra Gordon Biersch's motion for summary judgment. As an initial matter, plaintiff argued that her common law negligence claims were not preempted by R.C. 4399.18. More particularly, plaintiff argued that her claim under R.C. 4399.18 was aimed at holding Gordon Biersch vicariously liable for the actions of its intoxicated patrons. Her negligence claim, independent from the sale and service of alcohol, was intended to hold Gordon Biersch liable for its own negligence in engaging decedent's aid in breaking up the fight and in failing to protect him from the foreseeable criminal acts of third parties. Plaintiff further argued that summary judgment was inappropriate on her R.C. 4399.18 and common law claims.
 {¶ 9} In its reply brief, Gordon Biersch contended that plaintiff had effectively abandoned her R.C. 4301.22, 4301.69 and4399.16 claims by failing to counter the arguments set forth in its motion for summary judgment. Gordon Biersch also asserted that certain evidence submitted by plaintiff was inadmissible and thus could not be considered in opposition to the motion for summary judgment. Finally, Gordon Biersch argued that plaintiff's admissible evidentiary materials failed to support either her R.C. 4399.18 or common law claims.
 {¶ 10} By decision and entry filed January 21, 2005, the trial court granted summary judgment in favor of Gordon Biersch on all plaintiff's claims. The court held that R.C. 4399.18
provides the exclusive remedy against a bar owner when the actions of an intoxicated person cause injury, and that plaintiff failed to establish Gordon Biersch's liability under the statute.
 {¶ 11} The court further barred plaintiff's common law claims, holding that, since plaintiff had argued that the actions of an intoxicated person caused the fatal injury, R.C. 4399.18
was her exclusive remedy. Despite this finding, the court thoroughly analyzed plaintiff's common law claims, concluding that the evidence was insufficient as a matter of law to establish that Gordon Biersch owed a duty to warn or protect its patrons from the criminal acts of third parties. The court also determined that plaintiff failed to establish violations of R.C.4301.22, 4301.69 and 4399.16.
 {¶ 12} Plaintiff has timely appealed the trial court's judgment, advancing a single assignment of error, as follows:
The trial court erred by granting summary judgment in favor of defendants Gordon Biersch Brewery Restaurant Group, Inc., D/B/A Gordon Biersch Brewery Restaurant, and GB Acquisitions, Inc.
 {¶ 13} In reviewing a summary judgment disposition, an appellate court applies the same standard as that applied by the trial court. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107. An appellate court reviews a summary judgment disposition independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs.
(1993), 87 Ohio App.3d 704, 711. In determining whether a trial court properly granted summary judgment, an appellate court must review the standard for granting summary judgment set forth in Civ.R. 56, as well as the applicable law.
 {¶ 14} Summary judgment is appropriate only where the evidence demonstrates that: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); State ex rel. Grady v. State Emp.Relations Bd. (1997), 78 Ohio St.3d 181, 183. Any doubts must be resolved in favor of the nonmoving party. Viock v.Stowe-Woodward Co. (1983), 13 Ohio App.3d 7, 12.
 {¶ 15} A party seeking summary judgment on the ground that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating an absence of genuine issues of material fact as to the essential elements of the nonmoving party's claims. Dresher v. Burt
(1996), 75 Ohio St.3d 280, 293. The moving party may not fulfill its initial burden simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Id. Rather, the moving party must support its motion by pointing to some evidence of the type set forth in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. Id. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. Id. However, once the moving party satisfies its initial burden, the nonmoving party bears the burden of setting forth specific facts demonstrating that there is a genuine issue for trial. Id. The "portions of the record" to which Dresher refers are those evidentiary materials listed in Civ.R. 56(C) — "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact[.]"
 {¶ 16} In support of its summary judgment motion, Gordon Biersch submitted depositions of three of the four persons who accompanied decedent to Gordon Biersch on the night of his death — plaintiff, decedent's sister Cathy Keaton (now Keaton-Minock), and Travis Webb — as well as those of Gordon Biersch employees Ellyn Chantos, Chad Beldon, James Sharp, Brent Smith, Edward Annal, Ryan Kato, Adam Vanchoff, Adam Rowan and Daniel Mizenko. The pertinent portions of these summary judgment materials that set forth facts concerning the events of May 26, 2002 will be discussed in this section of the opinion.
 {¶ 17} In order to lend perspective to the summary of the copious amount of evidentiary submissions in the summary judgment exercise, we will indicate now that we are affirming the ruling of the trial court in its grant of summary judgment in favor of Gordon Biersch, albeit for different reasons. See Phillips v.Dayton Power Light Co. (1994), 93 Ohio App.3d 111, 115
("[s]ince the reviewing court must independently determine, as a matter of law, whether summary judgment was properly rendered based upon the record made up in the trial court, it is legally immaterial whether the trial court has provided a sound analysis, or any analysis. A summary judgment based on a legally erroneous analysis of the issues must be affirmed if the appellate court independently determines that upon the record summary judgment should have been rendered as a matter of law, albeit for different reasons"). A close and careful reading will demonstrate that there was absolutely no evidence as to how the decedent received the fatal wound or if its infliction was intentional, unintentional or accidental without the direct involvement of any other person (e.g. a broken bottle on the floor or by decedent's own negligence or action). There was even no evidence that the wound was directly related to the bar room brawl. A material issue of fact cannot be created when there is no "fact" except the existence of a possibility.
 {¶ 18} Further, we find that the portions of the experts' opinions which state that decedent's death was proximately caused by Gordon Biersch's negligence are speculative and, as such, would be inadmissible. The absence of any specific evidence as to how the wound came to be inflicted is critical. It was not even established that a broken beer bottle or bar glass was the source of the injury. The experts may have suspected that the perceived negligence of Gordon Biersch caused the events which led to decedent's death, but they had no facts before them which specifically supported that conclusion. Without any underlying factual basis to support their opinions, these speculations cannot be admissible in evidence. Naragon v. Dayton Power Light Co. (Mar. 30, 1998), Shelby App. No. 17-97-21. Accordingly, as summary judgment review permits review of only admissible evidence, the experts' inadmissible conclusions as to Gordon Biersch's liability for decedent's death cannot be considered. Id.
 {¶ 19} Gordon Biersch may have had a duty, it may have breached that duty, damage may have occurred, but without evidence of proximate cause, there can be no liability. Failure to prove any element of a negligence claim is fatal. Whiting v.Ohio Dept. of Mental Health (2001), 141 Ohio App.3d 198, 202, following Osler v. Lorain (1986), 28 Ohio St.3d 345, 347. Negligence alone does not equate to liability. There must be some evidence that creates a material issue of fact as to how any negligence of Gordon Biersch proximately caused the fatal wound. Here, no such evidence exists; hence, summary judgment was appropriate.
 {¶ 20} With the above summary of our rationale in mind, the evidence offered is summarized as follows: Plaintiff testified that sometime after midnight on May 26, 2002, she, Keaton-Minock, Webb, decedent and another woman, Kimberly Shay, drove to Gordon Biersch for a nightcap after drinking at another neighborhood bar. Decedent, Keaton-Minock and Shay went inside Gordon Biersch while plaintiff and Webb stayed in the truck. A few minutes later, decedent called Webb on his cell phone and asked him to come inside the bar. Upon entering, plaintiff saw decedent, Keaton-Minock and Shay standing near the bar; she also noticed a group of 25 to 35 people seated at nearby tables and booths. The group was boisterous and loud; they were not, however, interacting with decedent, Keaton-Minock, or Shay. Plaintiff indicated that, following a brief private conversation with decedent, Webb approached a man standing across the bar. Webb argued with the man and struck him in the face with his fist. Webb then turned and punched a man seated in the booth area. Thereafter, several members of the group jumped on Webb. Decedent soon joined the fight, during which several glasses were thrown and shattered. Plaintiff averred that no Gordon Biersch personnel ever attempted to intervene in the fight, which lasted five to ten minutes. Plaintiff later saw decedent and Webb running toward the front door; decedent did not appear to be injured. Plaintiff went outside, but did not see any of her friends. Eventually, she saw decedent standing just outside the front door, holding his bloody neck; she did not know how decedent was injured or whether the injury was inflicted intentionally or unintentionally.
 {¶ 21} Both Keaton-Minock and Webb generally corroborated plaintiff's account of the incident, with some additional details. According to Keaton-Minock, at some point during the fight, Webb fell to the floor; several men punched, kicked, and stabbed at him with broken glass; no one from Gordon Biersch attempted to assist Webb after he fell to the floor or to otherwise stop the fight. Decedent eventually pulled Webb to his feet; decedent then found Keaton-Minock and followed her toward the front door. Before reaching the door, Keaton-Minock felt decedent slump against her. She turned around and saw him clutching the right side of his neck; blood was seeping from between his fingers and he said he had "been hit." (Keaton-Minock November 4, 2003 deposition, at 83.) Keaton-Minock managed to pull decedent out the front door. Once outside, decedent ran down a walkway adjacent to the bar and then collapsed. Keaton-Minock testified that she did not see anyone throw anything at decedent and did not know what caused his injury.
 {¶ 22} Webb testified that decedent called him from the bar to enlist his aid in dealing with some patrons who were "messing with [decedent]" (Webb November 5, 2003 deposition, at 49). Inside the bar, Webb approached one of the reported offenders and told him to leave his friend alone. After Webb and the man exchanged pushes, Webb hit the man in the face. As Webb turned to walk away, a group of young men began shouting at him. One man seated in a nearby booth stood up as if he wanted to fight; Webb punched him in the side of the head. Thereafter, several men jumped on Webb, knocked him to the floor, and repeatedly kicked him and hit him with chairs. A few minutes later, decedent found Webb and helped him to his feet; Webb, decedent and Keaton-Minock then ran through the crowd toward the door. According to Webb, by this time, much of the crowd was engaged in the fight, during which glasses were shattered all over the bar; however, none of the Gordon Biersch employees attempted to intercede in the fight. Approximately 15 or 20 feet from the door, Webb saw decedent clutch his bleeding neck and say he had been "hit." Id. at 69. Webb did not see anyone cut decedent or throw anything at him. Decedent then ran out the door and collapsed. Outside, a few of the combatants from the bar averred that decedent "deserved [his] injury." Id. at 83. Police later questioned Webb; he was released the same night.
 {¶ 23} Chad Beldon, a bartender, testified that at approximately 12:30 a.m., on May 26, 2002, he observed two women and two men enter the bar together. Because the women appeared to be intoxicated, Beldon and the other bartenders resolved not to serve them alcohol. One of the men, later identified as Webb, began arguing with a male patron near the bar; Webb then approached the bar and asked one of the other bartenders, Dan Mizenko, for a drink. In an attempt to prevent an altercation, Mizenko refused to serve Webb and asked him to leave. Webb then intentionally knocked some glasses off the bar. According to Beldon, one of the other bartenders, Ryan Kato, confronted Webb and told him to leave. Thereafter, Webb engaged in a pushing match with a male patron seated at the bar; he then attempted, unsuccessfully, to punch another patron; instead, he hit a woman seated in a nearby booth.
 {¶ 24} Following this incident, a fistfight erupted between Webb and several occupants of the booth. The fight spilled over to an open area of the bar; other patrons yelled at Webb and tossed glasses into the melee. Webb's friend, later identified as decedent, joined the fight. Beldon estimated that the fight lasted two to five minutes and involved seven or eight patrons. According to Beldon, a group of Gordon Biersch employees eventually intervened and told everyone to leave. Shortly thereafter, Beldon went outside and observed decedent seated on the ground, bleeding from the neck; he did not see how decedent was injured.
 {¶ 25} Mizenko testified that he, Beldon and Kato eventually quelled the bar fight, which lasted three to five minutes, and thereafter asked everyone in the bar to leave. He further testified that he did not see who assaulted decedent.
 {¶ 26} Edward Annal, the assistant manager on duty the night of the incident, testified that, at about 1:45 a.m., he was in the dining area when he heard the crash of glass; shortly thereafter, one of the cocktail servers, Rob Carlson, reported that there was a problem in the bar area. Upon investigation, Annal saw a group of about seven to ten people aggressively pushing and shouting at one another; he had no idea when or how the fight started. Annal testified that, as the fight migrated from one area of the bar toward the door, a "tidal wave of glass" from the bar area shot over the group and smashed against the host stand. (Annal November 6, 2003 deposition, at 58, 64.) Annal and the other Gordon Biersch employees herded the combatants out of the bar. A short time later, Brent Smith, who had gone outside with the group, reported that someone had been seriously cut and needed medical attention. Annal called 911; police and emergency medical personnel responded shortly thereafter.
 {¶ 27} Carlson testified that he was working behind the bar when Webb approached and requested a drink from Mizenko, who refused to serve him. Webb became verbally abusive and knocked a glass to the floor. Mizenko told Webb to leave the bar. Pursuant to Gordon Biersch policy, Carlson and Kato escorted Webb toward the door. As they passed a booth, some of the occupants made derogatory comments about Webb. Webb responded by hitting one of the female occupants in the side of the head; he then ran toward another group of patrons seated at a nearby table. As the group traded punches with Webb, a woman was knocked to the floor. Decedent joined the fray, kicking the woman in the stomach. During the fight, glasses were thrown and chairs were overturned. Carlson stood behind a pillar to protect himself from flying debris; he then told Annal to call the police. Carlson estimated that the fight lasted three to four minutes. Eventually, the group dispersed and went outside; Carlson then noticed decedent holding his neck, which appeared to be badly cut.
 {¶ 28} Adam Vanchoff testified that he saw several young men fighting in the bar for "a couple of minutes." (Vanchoff November 7, 2003 deposition, at 24.) He could not identify any of the individuals involved in the fight and could not recall how the fight began. According to Vanchoff, he and another Gordon Biersch employee, Adam Rowan, watched the fight from about 15 feet away.
 {¶ 29} James Sharp testified that he served a group of patrons celebrating a 21st birthday, the majority of whom were drinking alcohol. At some point, Sharp noticed Webb engaged in a loud argument and pushing match with another patron near the bar. Thereafter, Webb and the birthday celebrants began arguing; eventually the arguing escalated into a fistfight. Sharp testified that he saw decedent in the area of the fighting, but could not determine his level of involvement. He further testified that when the combatants began throwing glasses and other objects, he and some of the patrons sought protection under a table. According to Sharp, the fight continued for three to five minutes, after which the participants went outside.
 {¶ 30} Smith testified that he noticed Webb in the bar with two visibly intoxicated women. At some point, he heard a glass break at the bar; he then heard Mizenko tell Webb to leave. Webb responded to Mizenko's command with a string of expletives. A patron seated in a nearby booth began arguing with Webb. Webb attempted to punch the patron with his fist; instead, he struck a woman seated in the booth. The patron lunged at Webb and the two began fighting. Eventually, several other patrons joined the fight, including decedent. Smith tried unsuccessfully to intercede. Smith testified that several glasses were thrown during the fight, which went on for no more than five minutes. After the fight ended, Smith went outside; he saw decedent walking toward him, clutching his throat; however, he did not see where or how decedent was injured.
 {¶ 31} Kato testified that he heard Webb arguing with another patron near the bar. After Webb struck the man, Kato and Mizenko told him to leave. Webb began shouting expletives and struck a woman seated in a nearby booth. Several of the males seated in the booth confronted Webb; a physical altercation then ensued. Kato initially attempted to intervene; however, after some of the patrons began throwing glassware, he retreated behind the bar. The crowd dispersed after being informed that the police had been called. Kato followed the group outside to make certain no more fights erupted. While outside, he noticed decedent bleeding from the neck; he did not, however, see how decedent was injured.
 {¶ 32} Adam Rowan testified that as he stood in the area between the bar and the restaurant, he heard glass breaking. He later saw a group of four or five patrons from the booth area fighting with Webb and another man; he did not know whether any of those involved in the fight had been drinking.
 {¶ 33} Ellyn Chantos, the general manager of the Columbus Gordon Biersch, testified that the police contacted her after the May 26, 2002 incident and requested her presence at the scene. Over the next few days, Chantos spoke individually to each of the employees who witnessed the fight. According to Chantos, Smith and Mizenko told her that they did not serve alcohol to decedent and his friends because they were obviously intoxicated. Chantos completed a "Guest Injury Incident Report" in which she noted that decedent had sustained a fatal cut to his neck, allegedly from broken glass, and that broken glass and overturned chairs were strewn about the floor of the bar.
 {¶ 34} As noted previously, plaintiff filed a memorandum contra Gordon Biersch's motion for summary judgment. In support, plaintiff submitted a copy of an informational summary prepared by a police detective following an interview with Gordon Biersch employee Smith. Plaintiff also submitted depositions identical to those filed by Gordon Biersch, as well as depositions of Gordon Biersch employees Barbara Rafalowski and Dylan Wayman, expert witnesses Jane Gray, Ph.D. and Timothy Dimoff, and Kimberly Shay, the fourth person with decedent on the night of his death. In addition, plaintiff submitted affidavits from Gordon Biersch employees Sharp and Wayman, expert witnesses Dimoff and Gray, and several Gordon Biersch patrons — John Burton, Angela Markin Seger, Joseph Gaynor, Jaya Venkataramani, and Sanjiv Lal. We set forth at this time those portions of the summary judgment materials pertinent to the events of May 26, 2002.
 {¶ 35} Kimberly Shay testified that she and Keaton-Minock were intoxicated when they arrived at Gordon Biersch. Shay described decedent as "very jittery" and "paranoid" when he called Webb and asked him to join them in the bar. (Shay February 7, 2004 deposition, at 52.) When Webb arrived, decedent remarked that he was afraid that the other people at the bar were going to cause problems. Webb approached a man at the bar; Webb pushed the man and punched him more than once. According to Shay, two Gordon Biersch employees unsuccessfully attempted to diffuse the situation, and the altercation grew to encompass several other patrons, including decedent. Shay estimated that the fight lasted a little over five minutes. At one point, she saw Gordon Biersch employees escort Webb out of the bar; she also noticed decedent and Keaton-Minock leave the bar together. Shortly thereafter, Shay walked outside; decedent walked toward her, bleeding from the throat. Shay testified that decedent did not indicate how he had been injured, and she did not witness the injury.
 {¶ 36} John Burton and Jaya Venkataramani testified that they arrived at Gordon Biersch at about 9:30 p.m. on May 25, 2002 and sat near a row of booths occupied by a group of fraternity members and friends celebrating a birthday. Most of the fraternity group was drinking beer and shots of liquor. As the evening progressed, the group got increasingly louder and more unruly. According to Burton, many in the group were clearly intoxicated. Burton and Venkataramani left the bar sometime between 12:30 and 1:00 a.m.; consequently, neither witnessed the fight.
 {¶ 37} Angela Markin Seger testified that she was sitting on Gordon Biersch's outdoor patio when the fight erupted inside the bar sometime after 1:00 a.m. At the time, there were approximately 60 to 80 people inside the bar. Seger further averred that she did not see who was involved in the fight or how it began; however, she saw a man run out of the front entrance of the bar holding his neck with blood running through his fingers.
 {¶ 38} Joseph Gaynor testified that he and several members of his fraternity, including Jim Sulayman, celebrated the 21st birthday of a fraternity member, Joe Krall, at Gordon Biersch on the evening of May 25, 2002. According to Gaynor, fraternity tradition dictated that Krall drink 21 shots of alcohol in celebration of his birthday. When Gaynor arrived sometime between 11:45 p.m. and 12:00 a.m., many in the group were already drinking heavily, and some were "obviously intoxicated." (Gaynor affidavit, at ¶ 5.) Despite this fact, Gordon Biersch personnel continued to serve the group alcohol. When Gaynor left at 1:00 a.m., the fight had not yet commenced. On his way out of the bar, he saw Sulayman's roommate, David Kosakowski, enter the bar and join the group.
 {¶ 39} Sanjiv Lal testified that he and some friends arrived at Gordon Biersch at approximately 12:00 a.m. on May 26, 2002. Since Lal's group knew many of the people in the fraternity group, they joined them in the bar area; all were drinking heavily. Among the revelers were David Kosakowski and Jim Sulayman. Around 1:00 a.m., an altercation broke out between Webb and another man at the bar, during which Webb struck a girl who was sitting with the fraternity group. A fight ensued between Webb and several in the fraternity group, which eventually encompassed 10 to 15 people. At some point, Lal walked outside the front entrance, where he observed Kosakowski "on top of [decedent] punching him." (Lal affidavit, at ¶ 6.) According to Lal, when Kosakowski got up, he had a "terrible look on his face" and threw "some kind of glass" on the ground; he then said "* * * I got to get the hell out of here," and ran away. Id. When decedent got up, Lal saw that he was bleeding profusely from a neck wound.
 {¶ 40} As noted, plaintiff contends the trial court erred in granting summary judgment in favor of Gordon Biersch. Initially, we note that plaintiff has failed to specifically challenge on appeal the trial court's grant of summary judgment on her claims under R.C. 4399.16, 4301.22 and 4301.69; accordingly, those issues are not before us.
 {¶ 41} Plaintiff first asserts the trial court erred in holding as a matter of law that R.C. 4399.18 subsumes all common law negligence claims against a liquor permit holder. Plaintiff maintains that Gordon Biersch was negligent in its provision of security, which is separate and distinct from vicarious liability under R.C. 4399.18, and that the trial court failed to recognize this distinction.
 {¶ 42} The version of R.C. 4399.18 in effect on May 26, 2002 provides, in pertinent part, as follows:
* * * [N]o person, and no executor or administrator of the person, who suffers personal injury, death, or property damage as a result of the actions of an intoxicated person has a cause of action against any liquor permit holder or an employee of a liquor permit holder who sold beer or intoxicating liquor to the intoxicated person unless the injury, death, or property damage occurred on the permit holder's premises or in a parking lot under the control of the permit holder and was proximately caused by the negligence of the permit holder or an employee of the permit holder. * * *
 {¶ 43} Accordingly, under R.C. 4399.18, a plaintiff must present some evidence to establish that (1) the act of an intoxicated person caused the personal injury, death, or property damage; (2) the intoxicated person's act occurred on the liquor permit holder's premises; and (3) the intoxicated person's act was proximately caused by the liquor permit holder's negligence in knowingly serving intoxicating beverages to the already intoxicated person. See McKinley v. Chris' Band Box,153 Ohio App.3d 387, 390, 2003-Ohio-4086.
 {¶ 44} The trial court determined that plaintiff had consistently asserted only that an intoxicated person inflicted decedent's fatal wound; as such, the court analyzed plaintiff's claim under R.C. 4399.18. That analysis resulted in a finding that plaintiff had failed to present any evidence demonstrating that Kosakowski or some other unidentified bar patron was intoxicated at the time the injury was inflicted, or that Gordon Biersch served Kosakowski or the unidentified bar patron with knowledge that they were already intoxicated. Having so found, the court concluded that plaintiff had failed to set forth a claim under R.C. 4399.18.
 {¶ 45} The court further determined that since R.C. 4399.18
provides the sole remedy for a plaintiff asserting a claim against a permit holder seeking to recover damages as the result of the actions of an intoxicated person, plaintiff's common law negligence claims were barred because plaintiff had asserted only that decedent's injury was inflicted by an intoxicated person. Accordingly, the court held that plaintiff's common law claims were prohibited.
 {¶ 46} Plaintiff does not contest the trial court's conclusion as to her claims under R.C. 4399.18. Indeed, plaintiff concedes that "[R.C. 4399.18] is applicable only when the actions of an intoxicated person cause injury. Since there is no evidence an intoxicated third party contributed to the death of [decedent], R.C. 4399.18 has no application." (Plaintiff's brief, at 13.) Rather, plaintiff challenges the trial court's determination that R.C. 4399.18 provides the exclusive remedy for a plaintiff asserting a cause of action against a permit holder due to injuries caused by an intoxicated third party on the permit holder's premises. Plaintiff contends that Ohio appellate courts have held, even in cases involving intoxicated patrons, that common law remedies are available when the negligence of a bar owner is alleged separate and apart from its status as a provider of alcohol. Here, plaintiff argues her amended complaint asserted alternatively that decedent's death was caused by either an intoxicated or a non-intoxicated assailant; therefore, even conceding that the trial court correctly determined she could not recover under R.C. 4399.18, she can, alternatively, recover under a common law negligence theory.
 {¶ 47} R.C. 4399.18 provides a cause of action against a liquor permit holder or its employees for off-premises injuries caused by an "intoxicated person" under certain limited circumstances. See Klever v. Canton Sachsenheim, Inc. (1999),86 Ohio St.3d 419, 421; Gressman v. McClain (1988),40 Ohio St.3d 359, 362-363. R.C. 4399.18 does not, however, address or otherwise limit causes of action against a liquor permit holder or its employees for injuries caused by a non-intoxicated person. "Therefore, neither an attack by one who is not intoxicated, nor a mere slip and fall not caused by an intoxicated person, would be included in the statute's exception." Aubin v. Metzger,
Allen App. No. 1-03-08, 2003-Ohio-5130, ¶ 16. The question in this case is whether plaintiff sufficiently asserted that decedent's injury was the result of the actions of a non-intoxicated person, sufficient to support a common law negligence claim. We find that she did.
 {¶ 48} The trial court found, and Gordon Biersch contends, that plaintiff asserted only that decedent was killed by an intoxicated patron. It is true that the amended complaint alleges that decedent's death was caused by an intoxicated patron. However, Civ.R. 8(E)(2) permits alternative or hypothetical pleading, or even the use of inconsistent claims, and states, in part, that "[w]hen two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has regardless of consistency and whether based on legal or equitable grounds."
 {¶ 49} As we view it, the amended complaint contains language which sufficiently asserts that decedent's fatal wound was inflicted by a non-intoxicated assailant. Our interpretation reinforces the concept of "notice pleading" within Civ.R. 8(A)[3] and comports with the principle of Civ.R. 8(F) that "[a]ll pleadings shall be so construed as to do substantial justice." "An important principle underlying the adoption of the Civil Rules is that the rules `reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.'"Iacono v. Anderson Concrete Corp. (1975), 42 Ohio St.2d 88, 92, quoting Conley v. Gibson (1957), 355 U.S. 41, 48, 78 S.Ct. 99. We therefore conclude that simply because the complaint states seemingly inconsistent claims as to the assailant's intoxication status, it does not negate the validity of either claim. Accordingly, plaintiff may pursue her claims of common law negligence against Gordon Biersch.
 {¶ 50} As noted previously, plaintiff asserts two separate negligence claims. Plaintiff first claims that Gordon Biersch negligently caused decedent's death by failing to provide adequate security on the premises. Second, plaintiff asserts that Gordon Biersch negligently caused decedent's death by requesting his assistance in controlling Webb.
 {¶ 51} To establish actionable negligence, a plaintiff must demonstrate the existence of a duty, a breach of that duty, and an injury proximately resulting therefrom. Reitz v. May Co.Dept. Stores (1990), 66 Ohio App.3d 188, 191, citing Jeffers v.Olexo (1989), 43 Ohio St.3d 140, 142. Failure to prove any element is fatal to a negligence claim. Whiting, supra.
 {¶ 52} The existence of a business owners' duty to provide for the security of its patrons is a question of law for the court to decide on a case-by-case basis. Reitz, supra, at 192. As a general rule, a business owner owes no duty to protect its patrons from the criminal conduct of a third person because such conduct is usually beyond reasonable expectation and a business owner is not an insurer of the safety of its patrons while they are on its premises. Id. However, a duty to protect patrons from the criminal acts of third parties may arise when the business owner knows or should know that substantial risk of harm to its patrons exists on its premises. Id.
 {¶ 53} As noted previously, the trial court concluded that the evidence was insufficient as a matter of law to establish that Gordon Biersch owed a duty to warn or protect its patrons from the criminal acts of third parties. We need not address the trial court's conclusion, however, because even if Gordon Biersch had a duty to protect decedent, we find that no evidence supports a conclusion that Gordon Biersch's failure to provide that protection caused decedent's injuries. Although proximate cause is ordinarily a question of fact for the jury, "where no facts are alleged justifying any reasonable inference that the acts or failure of the defendant constitute the proximate cause of the injury, there is nothing for the jury (to decide), and, as a matter of law, judgment must be given for the defendant."Sullivan v. Heritage Lounge, Franklin App. No. 04AP-1261, 2005-Ohio-4675, at ¶ 33, quoting Stuller v. Price, Franklin App. No. 03AP-66, 2004-Ohio-4416, at ¶ 70.
 {¶ 54} Here, no evidence demonstrates either that Gordon Biersch's failure to intervene in the bar fight was the proximate cause of decedent's death or that the fight itself was the proximate cause of decedent's death. Plaintiff can only speculate that the temporal relationship between the fight and the fatal injury relates the two. Not one person who was at Gordon Biersch on the night of decedent's death testified that they knew how decedent was killed, how the wound was inflicted, or even if a person inflicted it. In addition, although both of plaintiff's experts opined that Gordon Biersch's negligence in failing to provide adequate security proximately resulted in decedent's death, both admitted that they did not know who killed decedent, whether the assailant was a bar patron, whether the assailant was involved in the fight inside the bar, or, most importantly, whether decedent's death was even related to the fight. Accordingly, their opinions do not create a genuine issue of material fact as to proximate cause, as neither opinion is supported by any facts. Plaintiff's best attempt at establishing how decedent was killed is the testimony of Lal, who saw Kosakowski punch decedent and then flee the scene after discarding a piece of glass. However, Lal testified that this incident occurred outside the front entrance of the bar, and not in the bar area where the fight occurred. In short, the only person who may have witnessed the fatal assault testified that it happened well away from the fight.
 {¶ 55} For the foregoing reasons, we conclude that plaintiff did not sustain her burden of supporting her claim with evidence establishing a genuine issue of material fact as to whether Gordon Biersch's negligence in failing to provide adequate security on the premises was the proximate cause of decedent's death.
 {¶ 56} Plaintiff also contended that Gordon Biersch negligently caused decedent's death by engaging his aid in controlling Webb. In support of this claim, plaintiff submitted an "Informational Summary" prepared by Columbus Police Detective Timothy E. Huston following his interview with Smith. The summary includes Smith's statement that soon after Webb punched the man in the booth, several Gordon Biersch employees appealed to decedent for help in getting Webb out of the bar.
 {¶ 57} Assuming, arguendo, the admissibility of the challenged statement, plaintiff's assertion that Gordon Biersch "appealed to [decedent] to rescue other patrons and help diffuse the fight" (brief, at 16) mischaracterizes Smith's statement. Plaintiff infers that Gordon Biersch employees asked decedent to dive into the melee that followed after Webb punched the man in the booth. As noted, however, Smith stated only that decedent was asked to help get his friend Webb out of the bar. Further, plaintiff merely speculates that this request prompted decedent to join in the fight, or that, absent such request, he would not have joined the fight. No evidence supports either of these propositions. Finally, and most importantly, even if Gordon Biersch negligently sought decedent's assistance in breaking up the fight, we have already determined that plaintiff has failed to satisfy her burden of establishing a genuine issue of material fact as to proximate cause.
 {¶ 58} Lastly, plaintiff contends that the trial court's application of R.C. 4399.18 creates arbitrary classifications regarding the rights of tort victims to recover against liquor permit holders in violation of Section 2, Article 1, Ohio Constitution. More specifically, plaintiff contends that the trial court's application of R.C. 4399.18 creates arbitrary distinctions between victims injured by intoxicated patrons and victims injured by non-intoxicated patrons relative to their right to assert common law negligence claims against a liquor permit holder.
 {¶ 59} A review of the record reveals that plaintiff did not contest the constitutionality of R.C. 4399.18 in her memorandum in opposition to Gordon Biersch's motion for summary judgment. "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." Statev. Awan (1986), 22 Ohio St.3d 120, syllabus. (Emphasis added.) Here, the intoxication status of decedent's assailant, as it related to plaintiff's ability to assert claims under both R.C.4399.18 and the common law, was the central theme of Gordon Biersch's motion for summary judgment. Thus, plaintiff's contention that she could not have raised the argument at the trial court level is disingenuous. Further, our determination that plaintiff successfully pled alternative causes of action under R.C. 4399.18 and the common law renders plaintiff's argument moot.
 {¶ 60} For the foregoing reasons, plaintiff's single assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is hereby affirmed, albeit for different reasons.
Judgment affirmed.
French and McGrath, JJ., concur.
[1] Plaintiff also sued Nationwide Realty Investment, Inc., Nationwide Life Insurance Co., Nationwide Mutual Insurance Co., and AD Investments, LLC. All four entities were ultimately dismissed from the lawsuit.
[2] We emphasize that these facts represent only the allegations contained in the complaint.
[3] Civ.R. 8(A) provides, in part, that "A pleading which sets forth a claim for relief * * * shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief to which he deems himself entitled."